**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

**Civil Action No.: 9:24-cv-80738-RLR/BER**

JANE DOE (E.W.),

                  Plaintiff,

               v.

CLASSICA CRUISE OPERATOR, LTD.,
d/b/a MARGARITAVILLE AT SEA,
WYNDHAM HOTELS AND RESORTS,
LLC, TMH WORLDWIDE, LLC., WHG
CARIBBEAN HOLDINGS, INC., CLUB
VIVA INTERNATIONAL, INC., BARBARY
BEACH DEVELOPMENT LIMITED d/b/a
VIVA FORTUNA BEACH BY WYNDHAM,
XYZ DEFENDANT(S), and ASSAILANT 1,

                  Defendants.

## DEFENDANT, WHG CARIBBEAN HOLDINGS, INC.'S, MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [ECF No. 14]

    Defendant, WHG Caribbean Holdings, Inc. ("WHG"), by and through undersigned counsel hereby files this Motion to Dismiss Plaintiff, Jane Doe (E.W.)'s Amended Complaint (the "Motion"), and in support thereof states as follows:

### I.      Overview

    The core of this dispute involves an alleged sexual assault occurring at a resort, owned and operated by Co-Defendant(s), Barbary Beach Development Limited D/B/A Viva Fortuna Beach By Wyndham ("Barbary") and/or Club Viva International, Inc. ("Club Viva"), in Freeport, Bahamas. The Plaintiff, a resident of Missouri, claims negligence on the part of various co-defendants.

## II.      Summary of the Argument

First, WHG argues that federal admiralty jurisdiction does not apply to the Amended Complaint. In the present case, the incident occurred on land, at a Bahamian hotel, with no connection to navigable waters or maritime activities. The allegations do not involve a vessel in navigation, nor did the tort occur near the ship as in the *Doe v. Celebrity Cruises* case, which is limited to its facts. WHG argues that the Plaintiff's claims arise from a land-based tort involving a Bahamian employee at a Bahamian resort, which does not satisfy the location test or the maritime connection test, as it has no potential to disrupt maritime commerce. Therefore, federal admiralty jurisdiction is inapplicable. Additionally, the Plaintiff failed to provide a sufficient statement of jurisdiction under Rule 8(a)(1).

Second, WHG contends that all the events giving rise to Plaintiff's claims occurred in the Bahamas and all the critical liability witnesses and evidence relating to Plaintiff's claims and theories of liability are located there. Should the case proceed in the Southern District of Florida, the Defendants will not be able to compel the production of documents and/or live testimony of critical witnesses to challenge Plaintiff's claims. WHG respectfully submits that the instant Motion to Dismiss and the supporting Affidavits of Kendra Mallet establishes the existence of a manifest "*material injustice*" that would be exacted upon the Defendants if they were required to defend the Plaintiff's negligence related claims in this forum. WHG does not own, control, manage, occupy, or maintain the subject resort or the land on which it resides. Club Viva and Barbary are not agents, employees, or representatives of WHR or WHG and thus cannot direct and control their appearance.

Moreover, without having access to the Resort, security guards, and other hotel staff who were working on the Resort property at the time of the alleged incident, the Defendants will not

have the ability to adequately challenge/rebut the Plaintiff's allegations. Moreover, the Defendants will also not be able to implead Assailant 1 into this proceeding inasmuch as it is not amenable to service of process in this district. Accordingly, notwithstanding her U.S. citizenship, the Plaintiff's Amended Complaint must be dismissed in favor of litigation in the Bahamas for the reasons and authorities submitted below.

In sum, WHG argues that the Amended Complaint must be dismissed as maritime law does not apply to Plaintiff's claims, the Bahamas provide an adequate forum for Plaintiff to bring this lawsuit against the necessary parties, both the private and public interest factors weigh heavily in favor of dismissal and trial in the Bahamas, and Plaintiff can reinstate this suit in the Bahamas without prejudice or inconvenience. Additionally, and in the alternative, Plaintiff's Amended Complaint should be dismissed as Plaintiff failed to comply with the plausible fact pleading requirements of Fed. R. Civ. P. 8 and failed to state a claim or cause of action for Negligent Failure to Warn upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

### III.     Plaintiff's Allegations

1.      This lawsuit arises from an alleged sexual assault committed against Plaintiff, E.W. (hereinafter, "Plaintiff") while vacationing at Viva Fortuna Beach By Wyndham (the "Resort") owned and operated by Barbary and/or Club Viva. [ECF No. 14].

2.      While at the Resort, a Barbary and/or Club Viva Resort employee, Assailant 1, sexually assaulted Plaintiff. *Id*. at ¶21.

3.      On August 6, 2023, Assailant 1, a Resort employee and member of the Resort's "Bravo" team, used his special status as a security provider of the Resort to gain access to the control room for the Resort's theatre where the incident then occurred. *Id*.

4.      The alleged assault took place entirely within the Bahamas and involved the direct

actions of a Bahamian entities' employee at a Bahamian resort. *Id.* at ¶¶21-22.

5.       Plaintiff is a U.S. citizen from Missouri, while the entities involved—such as the Barbary and co-defendant Club Viva—are foreign corporations, operating out of the Bahamas and the Dominican Republic, respectively. *Id.* at ¶¶1, 7-8.

6.       WHG, Wyndham Hotel and Resorts, LLC ("WHR"), TMH Worldwide, LLC ("TMH"), and Classica Cruise Operator Ltd. ("Classica") are U.S. entities. *Id.* at ¶¶3-6.

7.       Assailant 1 is an individual employed by Barbary and/or the Resort. *Id.* at ¶¶10.

### IV.    Affidavit of Wyndham Hotels and Resorts, LLC's Vice President of Global Franchise Administration [ECF: 22-1]

8.       WHG is the licensor of the "Trademark Collection® by Wyndham" trademarks and service marks to independent hotel owners and operators. *Mallet Aff.* at ¶ 5.

9.       On April 18, 2023, WHG, as licensor, and Co-Defendant, Club Viva, as franchisee, entered into a license agreement (the "License Agreement") for the operation of the above-referenced Trademark Collection® by Wyndham Facility. *Id.* at ¶ 3.

10.       Pursuant to the terms of the License Agreement, Club Viva is permitted to use the 'Trademark Collection® by Wyndham' trademarks and service marks in connection with its operation of the Facility. *Id.*

11.       Pursuant to the terms of the License Agreement, Club Viva is not an agent, legal representative, joint venturer, partner, employee, or servant of WHG. *Id.* at ¶ 7, License Agreement at Article 11, General Provisions, Section 11.7.

12.       WHG does not own, operate, manage or occupy the Resort or the land on which it resides. *Id.* at ¶ 5.

13.       WHG has never directed or been involved in the day-to-day operations or management of any licensed premises. *Id.*

14.     Individuals employed at a Trademark Collection® by Wyndham property are employees of the licensee or operator of the facility; they are not employees of WHG. *Id*.

15.     The Resort was owned and/or operated by Franchisee at the time of the alleged incident involving Plaintiff. *Id*.

16.     Assailant 1, Club Viva, Barbary are neither employed nor controlled by WHG. *Id*.

17.     Club Viva is not an agent, employee, or representative of WHG. *Id*. at ¶ 6.

18.     WHG has never participated in the management or operation of the Resort. *Id*. at ¶ 8-11.

19.     WHG does not have the right to hire, supervise, or discharge employees at the Resort. *Id*. at ¶ 9.

20.     WHG has never controlled any aspect of employment at the Resort. *Id*. at ¶ 12.

## V.     Argument and Incorporated Memorandum of Law

### a.   Legal Standard

To state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While the Court must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing Twombly, 550 U.S. at 555, 127 S.Ct. 1955).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim of relief that is plausible on its face.' " *Id*. (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id*.

Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id*. Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw upon its judicial experience and common sense. *Id*. at 679, 129 S.Ct. 1937. A court may dismiss a case with prejudice if the allegations of a complaint, even when taken as true, provide no basis for relief or when amendment would be futile. *E.g., Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999); *Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*, 438 F. Supp. 3d 1346, 1356 (S.D. Fla. 2020).

"[A] motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007). When the 12(b)(1) motion to dismiss is based on a factual challenge the court is not limited to the four corners of the complaint, but rather, the court can consider "material extrinsic from the pleadings, such as affidavits or testimony" to determine whether it actually has subject-matter jurisdiction. *Stalley v. Orlando Reg'l Healthcare System, Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008). Extrinsic evidence is allowed because the outcome of a 12(b)(1) motion is meant to determine the very "existence" of the court's "power to hear the case," and is, thus, a crucial threshold issue. *Williamson*, 645 F.2d at 412-13.

Importantly, the parties seeking to invoke federal jurisdiction bear the burden of proving

that federal jurisdiction exists. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) ("[a] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection..."); *Springer v. Ferryman*, 401 Fed. Appx. 457, 458 (11th Cir. 2010) ("[t]he party invoking federal subject matter jurisdiction bears the burden of proving its existence"); *Renin v. Cancel*, 708 F.Supp.2d 1315, 1317 (S.D. Fla. 2010) ("A presumption exists that a federal court lacks jurisdiction in a particular case until it has been demonstrated that jurisdiction over the subject matter exists [citations omitted]. The burden of establishing that jurisdiction exists falls to the party invoking the court's jurisdiction.").

### a. Arguments Adopted from WHR's Motion to Dismiss the Amended Complaint

WHG adopts and joins the following arguments as set forth in WHR's Motion to Dismiss [ECF NO. 21] and briefly discusses them below.

### i. The Court does not have Admiralty Jurisdiction

A party seeking to invoke federal admiralty jurisdiction over a tort claim must satisfy conditions both of location and of connection with marine activity. 28 U.S.C.A. § 1333(1); *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). "Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters."[1] *See also Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990) ("Even when the parties allege diversity of citizenship as the basis of the federal court's jurisdiction (as they did in this case), if the injury occurred on navigable waters, federal maritime law governs the substantive issues in the case." (citations omitted)). *Giuliani v. NCL (Bahamas) Ltd.*, No. 1:20-CV-22006, 2021 WL 2573133, at *2 (S.D. Fla. June 23, 2021).

---

[1] *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (citing *Keefe v. Bah. Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) (per curiam));

This is also true for torts that "occurred at an offshore location during the course of a cruise."[2]

Here, Plaintiff cannot satisfy the location test. The incident described in Plaintiff's Amended Complaint occurred on land while the Plaintiff was a guest at a hotel for several days, not on navigable waters. Am. Compl. ¶ 21. The alleged tort did not occur on navigable waterways, was not caused by a vessel in navigation, nor was it committed by a Margaritaville employee. *Id*. Instead, the Amended Complaint describes a land-based tort with no connection to maritime activities. The *Goodwin's* court's analysis of *Doe* is instructive. As the court recognized, Doe involved a claim by a cruise passenger against a cruise line for the alleged rape committed by crew member of the ship, at a location that was very close to the ship. *See Goodwin*, 2006 WL 8426843 at *6. After stating that *Doe* was "inapposite," the *Goodwin* court noted:

> "[f]irst of all, the [Doe] holding was primarily based on the 'peculiar circumstance []' that the 'sexual battery occurred very close to the docked ship, and neither the victim passenger nor the crew member left the port of call or traveled any real distance from the ship.'" Id. The court added that the "[t]he [ Doe] panel also noted that the 'cruise ship allowed passengers to come and go from the ship as they elected, … was close by and visible from the [nightclub],' and "passengers and crew members routinely went back and forth between the [nightclub] and ship …'"

> *Id*; *see also Doe v. Celebrity Cruises, Inc*., 394 F.3d 891, 900–02 (11th Cir. 2004).

*Doe* is limited to its facts and allegations- *i.e.*, a claim brought by a cruise passenger against a cruise line arising out of the actions of the cruise line's employee which occurred close to the ship and were preceded by acts that occurred aboard the ship. The Eleventh Circuit's underlying concern for uniformity in maritime activity does not exist in this case against Bahamian land-based operators. As the allegations in Plaintiff's Amended Complaint establish, Plaintiff's claims arise from the actions of a Bahamian employee, at a Bahamian resort, owned by a Bahamian company,

---

[2] *Ceithaml v. Celebrity Cruises, Inc.,* 739 F. App'x 546, 550 n.5 (11th Cir. 2018) (per curiam) (citing *Doe v. Celebrity Cruises, Inc*., 394 F.3d 891, 900–02 (11th Cir. 2004)).

and governed by Bahamian laws. Again, Plaintiff's claims do not involve the type of acts or conduct that trigger the *Doe* court's concern for uniformity in maritime law.

The connection test raises two issues: (1) whether the incident in issue has "a potentially disruptive impact on maritime commerce" and; (2) whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity. *Grubart*, at 534 513. The Resort's business operations are generally unrelated to traditional maritime activity as their business operates inland. Additionally, the incident is more likely related to negligent security at a specific premises and unlikely to have a disruptive impact on maritime commerce. Moreover, the operation of a Bahamian resort has nothing to do with the State of Florida and/or the United States. As a final matter, Plaintiff should have, but did not, allege "a short and plain statement of the grounds for the court's jurisdiction...." *See* Fed. R. Civ. P. 8(a)(1); [ECF No. 14] at ¶12.

### ii. *Lauritzen* and *Rhoditis factors.*

WHG also argues that this case should be dismissed in favor of litigation in the Bahamas under the *forum non conveniens* doctrine. However, before proceeding with a traditional *forum non conveniens* analysis, the Court must address whether United States maritime law applies to this case. Plaintiff carries the burden of demonstrating United States maritime law is applicable because a choice of law question is a threshold issue to determining whether this case should be dismissed for *forum non conveniens*. [3] The Eleventh Circuit has made clear that "when confronted with making a choice between applying federal maritime law and the law of a foreign country," courts are to examine the *Lauritzen* and *Rhoditis* non-exhaustive list of factors, discussed below.

---

[3] *Vasquez v. Yii Shipping Co.*, No. 11-60248-CIV-ALTONAGA/Simonton, 2012 U.S. Dist. LEXIS 174964, at *4 (S.D. Fla. Dec. 10, 2012).

*Cooper v. Meridian Yachts, Ltd.,* 575 F.3d 1151, 1174 (11th Cir. 2009).[4]

The "mere fact that a plaintiff is a United States citizen does not in and of itself, conclusively establish the convenience of a United States forum."[5] In examining the base of operations factor, the Court must look for a substantial relation that would justify the application of U.S. law. *Bautista v. Cruise Ships Catering & Serv. Int'l, N.V.,* 350 F. Supp. 2d 987, 990 (S.D. Fla. 2003). Barbary is a foreign company organized under the laws of the Bahamas. Am. Compl. ¶ 8. Margaritaville has a port of registry in the Bahamas. Club Viva is a Dominican Republic entity. *Id.* ¶ 7. There is no dispute whatsoever that the accident in question occurred entirely at the Resort in Freeport, Bahamas and was initiated by a Bahamian entity's employee. Accordingly, the place of wrongful act and the co-defendants base of operations weigh against the application of United States law to the present matter. Moreover, important security camera footage and other documentary evidence pertaining to the resort accommodations, policies, design plans, maintenance, security guards, employee records, and the accident investigation are located in the Bahamas and beyond this Court's subpoena power should weigh heavily in favor of dismissal.

Additionally, WHG will be prejudiced by their inability to implead Assailant 1. The

---

[4] In *Lauritzen v. Larsen,* 345 U.S. 571 (1953), the U.S. Supreme Court identified seven relevant choice of law factors: the (1) place of the wrongful act, (2) law of the flag, (3) allegiance or domicile of the injured, (4) allegiance of the defendant shipowner, (5) place of contract, (6) inaccessibility of a foreign forum, and (7) law of the forum. *Lauritzen v. Larsen,* 345 U.S. 571, 582–93. In addition, courts must also consider whether the defendant has a base of operations in the United States. *See Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 309 (1970). These eight factors are not an exhaustive list, and the test is not a mechanical one. *See Szumlicz,* 698 F.2d at 1195.

[5] *Morse v. Sun Int'l Hotels Ltd.*, 2001 U.S. Dist. LEXIS 23488 (S.D. Fla. 2001)(J. Jordan)(claim of U.S. citizen arising out of jet ski accident in the Bahamas dismissed on basis of *forum non conveniens*). *See also J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co. Ltd.*, 515 F. Supp. 2d 1258, 1270 (M.D. Fla. 2007)(case dismissed in favor of Japan although plaintiffs were U.S. citizens); *Chierchia v. Treasure Cay Services a/k/a Treasure Cay Services, Inc.*, 738 F. Supp. 1386, 1388 (S.D. Fla. 1990)(J. King)(case dismissed in favor of Bahamas where plaintiff was New York resident).

inability to implead non-parties into a controversy is a widely recognized private interest factor that weighs heavily against a plaintiff's choice of forum.[6] A principal reason for the importance of this private interest factor is the need for the convenience of resolving all claims in a single proceeding and avoiding inconsistent verdicts. *Id*. Lastly, the fact that WHR licenses its intellectual property to TMH insufficient to warrant application of United States law.[7]

### iii. *Forum Non Conveniens*

Under the forum non conveniens doctrine a district court may decline to exercise its jurisdiction, even though the court has venue, where it appears that the convenience of the parties and the court, and the interests of justice indicate that the action should be tried in another forum. *Singletary v. Grupo Pinero*, 45 F. Supp. 3d 1369 (S.D. Fla. 2014)[8]. WHG argues that litigating this matter in Florida would impose significant burdens on both the Court and the Defendant, due to the lack of connection between the forum and the facts of the case as well as the prejudice to WHG due to the factually intensive nature of this matter.

There is no abuse of discretion in dismissing a U.S. citizen's claim, however, if the defendant can show that the chosen forum would be unnecessarily burdensome for the defendant

---

[6] *McLane*, 2013 WL 6482012 *6; *Tazoe*, 631 F.3d at 1322; *Wagner v. Island Romance Holidays, Inc.*, 2013 WL 5718969 (S.D. Fla., Oct. 21, 2013) ("If indeed the security officers are independent contractors and not employees subject to Defendants' control, the inability for the Defendants to implead Guardsman weighs in favor of dismissal"); *Beaman*, 790 F.Supp.2d at 1379 (citing to *Piper*, 454 U.S. at 259-60, 102 S.Ct. 252); *Miyoung*, 2008 WL 4186979 at *9; *Horberg*, 744 F.Supp.2d at p. 1293; *Morse*, 2001 WL 34874967 at *4 and *Early Leisure Concepts, Inc. v. Travel Leisure Concepts, Inc.*, 674 F.Supp. 1199 (E.D.Va. 1987).

[7] *Bautista*., 350 F. Supp. 2d 987, 990.

[8] *See Gulf Oil v. Gilbert*, 330 U.S. 501, 506-07 (1947). *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1188 (2007); *see also GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) ("A district court... may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness and judicial economy so warrant.").

FIELDS HOWELL LLP | 9155 SOUTH DADELAND BLVD | SUITE 1012 | MIAMI, FL 33156 | T: 786-870-5600 | F: 855-802-5821

or the court. *Piper*, 102 S. Ct. at p. 266.[9] Indeed, there are several recent decisions out of this district and circuit where the claims brought by U.S. citizens have been dismissed pursuant to the forum non conveniens doctrine.[10] Accordingly, notwithstanding her U.S. citizenship, the Plaintiff's Amended Complaint must be dismissed in favor of litigation in the Bahamas as (1) an adequate alternative forum is available, (2) the public and private interest factors weigh in favor of dismissal, and (3) the Plaintiff can reinstate her suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001).

### 1. Adequate Alternative Forum in the Bahamas.

The Bahamas provides an available and adequate forum. Bahamian courts can provide appropriate legal remedies for the Plaintiff's claims, including causes of action based on negligence. WHG has expressed its willingness to submit to Bahamian jurisdiction and waive any procedural defenses related to timeliness. Moreover, this Court has consistently found the Bahamas to be an available and adequate forum for such litigation if the *forum non conveniens* factors weigh in favor of the moving party.[11] WHG stipulates that they will appear in the appropriate Bahamian forum and waive any applicable statute of limitations were this Honorable

---

[9] In *Piper*, the Supreme Court stated the following with respect to the fact that claims by U.S. Citizens are not immune from dismissal: "[c]itizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Piper*, 102 S.Ct. at n. 23.

[10] *McLane v. Marriott*, 2013 WL 6482012 (11th Cir. 2013), affirming, *McLane v. Marriott*, 2013 WL 1810649 (S.D. Fla. April 30, 2013); *Tazoe v. Airbus*, S.A.S., 631 F3d 1321 (11th Cir. 2011); *Ochoa v. Empressas ICA, S.A.B.* De C.V., 2013 WL 5674697 (S.D.Fla., Oct. 17, 2013); *Montgomery v. Oberti*, 2013 WL 2120824 (S.D.Fla., May 16, 2013) and *Beaman*, 790 F.Supp.2d at 1375.

[11] *See, e.g., Klyszcz v. Cloward H20 LLC,* No. 11-23023, 2012 WL 4468345, at *3-4 (S.D. Fla. Sept. 26, 2012)*; Haddad v. RAV Bahamas, Ltd.,* No. 05-21013-CIV, 2008 WL 1017743, at *4 (S.D. Fla. April 9, 2008); *Horberg v. Kerzner Int'l Hotels Ltd.,* 744 F. Supp. 2d 1284, 1291 (S.D. Fla. 2007).

Court to grant the instant Motion.

### 2.   Private and Public Interest Factors Favor Dismissal

The Plaintiff's Amended Complaint presents issues which are of a local nature inasmuch as they implicate the security services provided by a Bahamian security company at a resort located in the Bahamas and operated by a Bahamian corporation. As it relates to public interests, Florida has minimal interest in resolving a dispute that centers around an event occurring entirely in a foreign country. The Bahamian courts, in contrast, have a stronger interest in adjudicating matters that directly impact the safety and tourism industry within their jurisdiction. Further, Florida jurors should not be burdened with hearing a case that has no substantial connection to their forum. Neither this Honorable Court nor any jury pool selected from this forum should decide questions regarding the alleged negligence of the Defendants and/or whether the local standard of care governing security services provided in Bahamas was breached.[12] Whether the Resort breached the local standard of care governing security at a Bahamian Resorts is a local controversy that must be decided by a local Court. This critical public interest factor, therefore, weighs heavily in favor of dismissal. *Id.*

As it relates to private interests, the vast majority of witnesses, physical evidence, and key personnel are located in the Bahamas. Litigating in Florida would significantly hinder access to

---

[12] *Prophet*, 778 F.Supp.2d at 1368, reversed on other grounds, 477 Fed.Appx. 121; 2011 WL 5603830 (11th Cir.); *Beaman*, 790 F.Supp.2d at 1380; *Miyoung Son*, 2008 WL 4186979 at *10; *Horberg*, 744 F.Supp.2d at p. 1296; *Morrone*, 2006 WL 6842082 at *4 (given that the particular crux of the dispute was the limit of a Bahamian hotel's duty to protect invitees from third-party criminal attack, the litigation involved an inherently local interest of Bahamian concern); *Morse*, 2001 WL 34874967 at *6; *Loya*, 583 F.3d at 666 (9th Cir. 2009); *Union Carbide Corp. Gas Plant Disaster At Bhopal, India In December*, 1984, 634 F.Supp. 842, 864 (S.D.N.Y. 1986); *Ledingam v. Parke-Davis Division of Warner Lambert Company*, 628 F.Supp. 1447, 1450 (E.D.N.Y. 1986) and *Harrison v. Wyeth Laboratories Division of American Home Products Corporation*, 510 F.Supp. 1, 8 (E.D. Penn. 1980).

vital witnesses and evidence[13][14]. Additionally, conducting a trial in Florida would impose a substantial logistical and financial burden, as travel arrangements would need to be made for Bahamian witnesses, many of whom may not be subject to U.S. jurisdiction.

The important private interest factors considered in the forum non conveniens analysis include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft*, 454 U.S. at 241 n. 6 (quoting *Gilbert*, 330 U.S. at 508). The inability to implead third parties is also an important private interest factor to be considered in the forum non conveniens analysis. *Id.* at pp. 259-260.

"A correct 'private interest' analysis begins with the elements of the plaintiff's causes of

---

[13] Access to evidence has been described by the Eleventh Circuit as perhaps the most important factor for this Court to consider. *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003).

[14] Ex. *King v. Cessna Aircraft Co*., 562 F.3d 1374 (11th Cir. 2009) (affirming order dismissing case based upon the doctrine of forum non conveniens in favor of litigation in Italy where the relevant witnesses were located); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424 (11th Cir. 1996) (unavailability of compulsory process to secure attendance of French witnesses in U.S. Court proceeding required dismissal for forum non conveniens); *Perez-Lang v. Corporacion de Hoteles*, S.A., 575 F.Supp. 1345 (S.D. Fla. 2008), aff'd, 325 Fed.Appx. 900 (11th Cir. 2009) (Order granting motion [*14] to dismiss on forum non conveniens grounds in favor of litigation in the Dominican Republic since witnesses were located there and the relative ability of a forum to compel the attendance of significant unwilling witnesses at the trial often is considered the most important factor); *Miyoung Son*., 2008 WL 4186979, *9 (S.D. Fla. 2008) ("Where several of the defendants are outside of the compulsory process of this Court and where those witnesses are the *Kerzner* defendants' main witnesses to challenge Plaintiffs' claims of liability, as in this case, the Court believes that the *Kerzner* defendants would be severely prejudiced in their ability to defend their case."); *Horberg*., 2007 WL 7274825, *5 ("the fact that many key witnesses, not within the Court's compulsory process, are located in the Bahamas is a private interest factor weighing in favor of dismissal); *Da Rocha v. Bell Helicopter Textron, Inc*., 451 F. Supp. 2d 1318 (S.D. Fla. 2006) (private interest factors weighed heavily in favor of dismissal where accident occurred in Brazil and all of the eyewitnesses were located there) and *Iragorri v. Int'l Elevator, Inc*., 203 F.3d 8 (1st Cir. 2000) (wrongful death claim was dismissed in favor of litigation in Colombia where the two principal eyewitnesses to the incident lived in Colombia).

action." *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003). "The court must then consider the necessary evidence required to prove and disprove each element." *Id*. "Lastly, the court should make a reasoned assessment as to the likely location of such proof." *Id*.; *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988) ("...the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's causes of action and to any potential defenses to the action").

It is undisputed that the Plaintiff's allegations have placed the type, quality and sufficiency of the security provided at the Resort directly into issue. *Id*. Plaintiff's allegations identify a security guard team who was employed by the Resort; who were on the property at the time of the alleged incident; who have knowledge material to the Plaintiff's claims and who are neither presently employed nor controlled by WHG. This Honorable Court should recognize that the testimony from the security guards who were on the Resort property at the time of the alleged incident will be critical to the Defendants' ability to challenge/rebut the Plaintiff's negligence claims. The Defendants' inability to challenge and/or rebut Plaintiff's claims due to the Defendants' lack of ability to access these relevant witnesses is a critical private interest factor that weighs heavily in favor of the dismissal of the Plaintiff's Amended Complaint.[15] If the Plaintiff's case

---

[15] *McLane*, 2013 WL 6482012 (11th Cir., Dec. 11, 2013); *Tazoe*, 631 F.3d at 1321; *King v. Cessna Aircraft Co.*, 562 F.3d 1374 (11th Cir. 2009); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424 (11th Cir. 1996); *McLane*, 2013 WL 1810649; *Ochoa*, 2013 WL 5674697; *Montgomery*, 2013 WL 2120824; *Prophet*, 778 F.Supp.2d at 1358; reversed on other grounds, 447 Fed.Appx. 121; 2011 WL 5603830 (11th Cir.); *Beaman*, 790 F.Supp.2d at 1377; *Perez-Lang v. Corporacion de Hoteles*, S.A., 575 F.Supp.2d 1345 (S.D. Fla. 2008), aff'd, 325 Fed.Appx. 900 (11th Cir. 2009); Miyoung Son, 2008 WL at 4186979 at *9; Aldana, 2007 WL 3054986 at * 5; *Horberg v. Kerzner Int'l Hotels, Ltd.*, 744 F.Supp.2d 1284, 1292 (S.D.Fla. 2007); *Da Rocha v. Bell Helicopter Textron*, Inc., 451 F. Supp. 2d 1318 (S.D. Fla. 2006); *Morrone*, 2006 WL 6842082 at *3 and *Morse*, 2001 WL 34874967 at *3.

FIELDS HOWELL LLP | 9155 SOUTH DADELAND BLVD | SUITE 1012 | MIAMI, FL 33156 | T: 786-870-5600 | F: 855-802-5821

remains pending in this forum, WHG will not have the ability to adequately defend, challenge and/or rebut same. WHG has, therefore, demonstrated the existence of "*positive evidence of unusually extreme circumstances*" and that a "*material injustice*" would be manifest were the Defendants forced to litigate the Plaintiff's negligence claims in this forum. Id. This private interest factor, alone, requires the dismissal of the Plaintiff's Complaint in favor of litigation in the Bahamas. *Id.*

### iv.  Shotgun Pleading

WHG also moves for dismissal on the basis that the Amended Complaint constitutes an impermissible shotgun pleading. A shotgun pleading, as defined by the Eleventh Circuit, occurs when a party improperly lumps together distinct claims against multiple defendants without specifying the factual basis for each claim as it pertains to each defendant. The Plaintiff's Amended Complaint groups multiple defendants under the collective term "Resort Defendants" without differentiating the specific conduct attributed to each entity. This pleading style makes it nearly impossible for WHG to discern what action it took to be part of this lawsuit as opposed to other co-defendants. The Plaintiff has failed to provide the necessary factual specificity, instead offering broad and undifferentiated allegations that fail to meet the minimum pleading standards.

The lack of clarity in the Plaintiff's Amended Complaint prejudices WHG's ability to mount an effective defense. The Plaintiff's inclusion of multiple unrelated defendants under vague headings confuses the issues and forces the Defendant to guess the specific claims against which it must defend.

### b.  Failure to State a Cause of Action based on Sham Pleading

If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under

Rule 56. However, courts resolving Rule 12(b)(6) motions may consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned without converting the motion into one for summary judgment under Rule 12(d). § 1357 Motions to Dismiss—Practice Under Rule 12(b)(6), 5B Fed. Prac. & Proc. Civ. § 1357 (4th ed.) (emphasis added).

Likewise, a sham, or frivolous, pleading can be stricken by the court. A sham pleading is one which is good in form, but false in fact. *See International. Telephone and Telegraph Corporation v. United Telephone Company of Florida*, 60 F.R.D. 177 (M.D. Fla. 1973).[16] A pleading may be sham, or false in fact, even if the party believed it to be true. *Id*. A pleading should be stricken when it appears that it is sham and false and that its allegations are devoid of factual basis.

In this case, the Plaintiff has not alleged any facts that would entitle the Plaintiff to relief on its claims. It is clear from the facts alleged in the Amended Complaint, the Affidavit, and License Agreement, attached hereto, that WHR, TMH, and WHG do not own, operate, manage, or occupy the premises where the incident occurred, nor has it ever. Moreover, TMH is not a party to the License Agreement. As such, the Plaintiff cannot in good faith claim that WHR, TMH, and WHG exercised any control over the premises, Barbary, Club Viva, nor the Assailant. No alteration or change of the allegations in the Plaintiff's Amended Complaint will be able to overcome the fact that WHR, TMH, and WHG are unrelated to the subject resort. As such, the

---

[16] *See Spanish Int'l Comm. Corp., Sin, Inc., v. Leibowitz*, 608 F. Supp. 178, 194 (S.D. Fla. 1985) (granting rule 12(b)(6) motion to dismiss). No "good ground" supports the pleading for which reason the Complaint should be stricken as sham. *See Incomco v. Southern Bell Telephone and Telegraph Co.*, 558 F.2d 751, 753 (5th Cir. 1977) (affirming dismissal).

Amended Complaint must be dismissed for failure to state a cause of action.

For the above reasons, it is clear that Plaintiff made allegations in its Amended Complaint which are false in fact and completely unsupported. There exists no facts or evidence that Plaintiff can allege that would support its claim that WHR, TMH, and WHG exercised any degree of control of the Resort and/or its operation. Likewise, Club Viva and Barbary are aware that WHR, TMH, and WHG does not set and/or enforce operating standards for the Resort or train employees. Plaintiff must know this because prior to WHG and TMH being served, Plaintiff's counsel was provided with the License Agreement. Yet, the Plaintiff has made allegations in its Complaint with the absolute knowledge of their falsity. As such, the Plaintiff's Complaint should be stricken as a sham pleading for its clear and undoubted falsity.

### c.  Negligent Failure to Warn

In Count IV, Plaintiff alleges WHG, and the "Resort Defendants", negligently failed to warn Plaintiff of the alleged dangerous conditions at the Resort. Plaintiff's failure to warn claim should be dismissed because Plaintiff has failed to sufficiently allege that WHG was on notice of the risk creating condition that allegedly caused her injuries. It is irrelevant if WHG was aware of prior incidents at the Resort as such notice would not give rise to a duty to warn based on the terms of the License Agreement and business relationship between the parties. Furthermore, any incident involving a guest in 2016 would not impart sufficient notice on WHG's behalf as it would be pure speculation that WHG would have been aware of any such incident.

In *Gayou v. Celebrity Cruises, Inc.*, No. 11-23359-CIV, 2012 WL 2049431, *5 (S.D. Fla. June 5, 2012), the court dismissed the complaint where the plaintiff failed to allege facts from which it may be inferred that the cruise line either knew or should have known of any dangerous or unsafe condition associated with the zipline excursion. The Court in *Gammons v. Royal*

*Caribbean Cruises Ltd.*, 558 F. Supp. 3d 1220, 1225 (S.D. Fla. 2021) further explained the requirements when it comes to pleading notice:

> It is not enough to say that Royal Caribbean approved the excursion, inspected the excursion yearly, and received reports from the excursion entities yearly. Unless Plaintiff can allege that Royal Caribbean saw that there was no assistance provided, no safety briefing, or other unreasonably dangerous circumstances were present when it did the approval or the inspection, the allegations are insufficient to provide notice.

The court reasoned that while the plaintiff alleged a host of breaches, including numerous conclusory allegations the cruise line failed to warn him of dangerous conditions it knew or should have known about, he provided no underlying facts suggesting the requisite actual or constructive knowledge on the cruise line's part. *Gayou.* at *5; *see also Ceithaml v. Celebrity Cruises, Inc.,* 207 F. Supp. 3d 1345, 1352 (S.D. Fla. 2016) (dismissing negligence claim where complaint "contain[ed] no facts supporting the inference that [the cruise line] knew or should have known the [excursion] was unsafe"); *Brown v. Carnival Corp.*, 202 F. Supp. 3d 1332 (S.D. Fla. 2016) ("Simply stating that Carnival had knowledge of a dangerous condition, without identifying the dangerous condition, and/or pleading how Carnival had knowledge of the condition, is insufficient."); *Thompson v. Carnival Corp.*, 174 F. Supp. 3d.

Aside from a post made 8 years ago, there are no facts alleged to show how any of the Defendants knew or could have known that there was a dangerous condition, or the unsafe manner in which the Resort's employees were behaving, which caused Plaintiff's injuries. Plaintiff's do not proffer facts supporting a duty to warn was triggered, only conclusory allegations. Given the Complaint's allegations, Plaintiffs cannot establish the Defendants breached their duty to warn about conditions it knew or should have known about. No factual support is provided to connect the injury to knowledge, actual or constructive, on behalf of the Defendants.

## VI.    Conclusion

Based on the interests of justice, the allegations, lack of admiralty jurisdiction,   and evidence supporting the applicability of the *forum non conveniens doctrine,* in addition to the clear defects in the pleading, WHG respectfully requests that the Court dismiss the Plaintiff's Amended Complaint. The Bahamas is the most appropriate forum for this litigation, given that the alleged incident, key witnesses, and pertinent evidence are located there. Moreover, the Plaintiff's vague and overly broad pleading fails to meet the requisite standards for proceeding in federal court. For these reasons, WHG urges this Court to grant the Motion to Dismiss and direct Plaintiff to pursue her claims in the Bahamian courts. Alternatively, WHG requests that the Court dismiss the Amended Complaint on the grounds that it constitutes an impermissible shotgun and/or sham pleading, fails to plead a cause of action for failure to warn, and to grant any other relief this Court finds just and proper.

## **REQUEST FOR RELIEF**

WHEREFORE, Defendant, WHG Caribbean Holdings, Inc., respectfully requests that the Court issue an order dismissing the Amended Complaint and for any other relief this Court finds just and proper.

Date: September 10, 2024                 Respectfully submitted,

*/s/ Tyler E. Sanchez*
Armando P. Rubio (Fla. Bar No. 478539)
Michael J. Redondo (Fla. Bar No. 1002566)
Tyler E. Sanchez (Fla. Bar No. 1018171)
Fields Howell LLP
9155 S. Dadeland Blvd., Suite 1012
Miami, FL 33156
Phone: 786.870.5610
Fax: 855.802.5821
arubio@fieldshowell.com
mredondo@fieldshowell.com
Tsanchez@fieldshowell.com

Case No.: 9:24-cv-80738-RLR

*Attorneys for Defendant, Wyndham Hotels and Resorts, LLC, TMH Worldwide, LLC, WHG Caribbean Holdings, Inc.*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

Electronic Delivery via CM/ECF day to all counsel of record.

*/s/ Tyler E. Sanchez*
Armando P. Rubio (Fla. Bar No. 478539)
Michael J. Redondo (Fla. Bar No. 1002566)
Tyler E. Sanchez (Fla. Bar No. 1018171)
FIELDS HOWELL LLP
9155 S. Dadeland Blvd., Suite 1012
Miami, FL 33156
Phone: 786.870.5610
Fax: 855.802.5821
arubio@fieldshowell.com
mredondo@fieldshowell.com
Tsanchez@fieldshowell.com