UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO. 24-cv-80738-RLR/BER

JANE DOE (E.W.),

      Plaintiff,

v.

CLASSICA CRUISE OPERATOR LTD.
d/b/a "*Margaritaville at Sea*",

WYNDHAM HOTELS AND RESORTS, LLC,

TMH WORLDWIDE, LLC,

WHG CARIBBEAN HOLDINGS, INC.,

CLUB VIVA INTERNATIONAL, INC.,

BARBARY BEACH DEVELOPMENT LIMITED
d/b/a "*Viva Fortuna Beach by Wyndham*",

XYZ DEFENDANT(S), and

ASSAILANT 1,

      Defendants.

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT, WHG CARIBBEAN HOLDINGS, INC.'S MOTION TO DISMISS, [ECF NO. 37]

    Plaintiff, by and through undersigned counsel, hereby responds in opposition to Defendant, WHG CARIBBEAN HOLDINGS, INC.'s ("WHG") Motion to Dismiss, [ECF No. 37]:

### INTRODUCTION AND BACKGROUND

    1.    This lawsuit arises from a rape committed against Plaintiff. [ECF No. 14]. Specifically, Plaintiff was a passenger on a cruise and the cruise ship was operated by Defendant, Classica Cruise Operator Ltd. ("Classica"). *Id.* at ¶16. As part of the cruise, Classica took Plaintiff to Freeport, Bahamas. *Id.* at ¶18. In the Bahamas, Plaintiff stayed at a Resort owned, operated and/or managed by Resort Defendants, including WHG. *Id.* at ¶¶19-20. While at the Resort, Plaintiff was raped by a Resort employee. *Id.* at ¶21. In Plaintiff's Amended Complaint, she asserts negligence claims against several defendants, including WHG. *Id.* at Counts III and IV.

2.        Plaintiff alleged WHG's involvement in the Resort's operation as follows:

> WHG directly or indirectly, granted the Resort permission to use the "Wyndham" trademark to name the Resort, for valuable consideration, in part so that American tourists, like Plaintiff, would feel safe and/or comfortable staying at the Resort. <u>Further, as a condition of WHG allowing the Resort to use the "Wyndham" name, WHG, directly or indirectly, set and/or enforced "Wyndam" Brand Standards for the Resort to follow in operating the Resort, and WHG required the Resort and/or its employees to undertake "Wyndham" training. As such, WHG exercised a high degree of control over the Resort and/or its operation.</u>

ECF No. 14, ¶6, *see also* ¶20.

3.        WHG has filed a motion requesting the Court to dismiss Plaintiff's claims against them based on *forum non conveniens*. [ECF No. 37].

4.        In summary, WHG's motion to dismiss on *forum non conveniens* grounds fails because: 1) Plaintiff is a U.S. citizen; 2) U.S. law applies to this case; 3) there is a Florida forum selection clause between Plaintiff and Classica; and 4) the private interest factors of this case entirely favor a U.S. forum, and WHG has not identified any specific witnesses only available in the Bahamas. The Court should deny WHG's motion to dismiss as it has completely failed to carry its "**heavy burden** in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430 (2007).

## <u>ARGUMENT AND INCORPORATED MEMORANDUM OF LAW</u>

**I.        Legal standard on a motion to dismiss for *forum non conveniens*.**

A motion to dismiss based on *forum non conveniens* is a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). *See Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1290 (11th Cir. 1998). The defendant invoking *forum non conveniens* – here WHG – "bears the heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co.,* 549 U.S. at 430; *Wilson v. Island Seas Investments, Ltd.,* 590 F.3d 1264, 1269 (11th Cir. 2009). Although the Court in deciding a motion under R. 12(b)(3) "may consider matters outside the pleadings, particularly when the motion is predicated upon key issues of fact," *Webster v. Royal Caribbean Cruises, Ltd.,* 124 F.Supp.2d 1317, 1320 (S.D. Fla. 2000), it "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Wai v. Rainbow Holdings,* 315 F.Supp.2d 1261, 1268 (S.D. Fla. 2004).

**II.      U.S. law applies to this case and, therefore, this case should not be dismissed on *forum non conveniens* grounds.**

"It is well established that a case should not be dismissed on *forum non conveniens* grounds if, in a case brought under the Court's admiralty jurisdiction, United States maritime law is applicable. *Szumlicz v. Norwegian Am. Line, Inc.,* 698 F.2d 1192, 1195 (11th Cir.1983) ("'[I]f United States law is applicable, the American court should retain jurisdiction rather than relegate the controversy to a foreign tribunal'"); *Doe v. Celebrity Cruises, Inc.,* 394 F.3d 891, 899 (11th Cir. 2004) (noting the Supreme Court suggests in *Norfolk Southern Railway Co. v. Kirby,* 543 U.S. 14, 23 (2004), that for a court to apply admiralty law, it must first have admiralty jurisdiction).

This Court has admiralty jurisdiction over this case because Plaintiff has brought maritime tort claims against Classica, [ECF No. 14, Counts I-II], as Plaintiff was a cruise passenger and the subject port stop at which Plaintiff became injured was an integral part of the cruise. *Doe v. Celebrity Cruises, Inc.,* 394 F.3d 891, 901 (11th Cir. 2004) ("Where a passenger or cruise vessel puts into numerous ports in the course of a cruise, these stopovers are the *sine qua non* of the cruise."). Plaintiff specifically explained in her Amended Complaint that the Court had admiralty jurisdiction over her case and her claims are governed by General Maritime Law. *See* ECF No. 14, ¶¶3, 11-12.[1] *See also* ECF No. 23, ¶11 (Classica's Answer, admitting admiralty jurisdiction).

**a.  This Court has admiralty jurisdiction over the entire case.**

"[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with marine activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co*., 513 U.S. 527, 534 (1995).[2] The Eleventh Circuit has held that a cruise ship's obligations to its passengers "extend literally beyond

---

[1] It does not matter here that Plaintiff invoked two bases for the Court's subject matter jurisdiction. *Cf.* ECF No. 12, ¶11 (28 U.S.C. § 1332 and § 1333) *with Belik v. Carlson Travel,* 26 F. Supp. 3d 126, footnote 7 (S.D. Fla. 2013) ("[D]efendants also insist Plaintiff assert[s] subject matter jurisdiction over the Defendants ... based solely upon diversity. … [D]efendants are mistaken—the Complaint asserts jurisdiction arises both in admiralty and due to diversity of citizenship.").

[2] The *Grubart* location and connection test requires that the following conditions exist for there to be admiralty jurisdiction: (1) "the tort occurred on navigable water or [the] injury suffered on land was caused by a vessel on navigable water"; (2) "the incident has a potentially disruptive impact on maritime commerce"; and (3) "the general character of the activity giving rise to the incident shows a substantial relationship to traditional marine activity." *Grubart,* 513 U.S. at 534.

the gangplank," even to common law torts against cruise ship passengers, such as sexual assault, that occur on land. *Doe*, 394 F.3d at 900–02 (finding admiralty jurisdiction existed where a ship's passenger was sexually assaulted by a crew member on land at a port of call). Further, courts have typically found that injuries suffered by cruise ship passengers while on shore excursions are sufficient to satisfy the *Grubart* test and invoke admiralty jurisdiction. *See, e.g., Balaschak v. Royal Caribbean Cruises, Ltd*., 2009 WL 8659594, at *4 (S.D. Fla. 2009) (cases cited).

The *Doe* Court explained that in order "[t]o satisfy the location test, the tort must have occurred on navigable water **or *the injury suffered on land must have been caused by a vessel on navigable water*.**". *Doe,* 394 F.3d at 900. This test is satisfied here because Plaintiff's injuries came about, in part, because Classica, the cruise vessel operator, failed to warn Plaintiff of dangerous conditions associated with the Resort Classica took Plaintiff as part of the cruise. *See* ECF No. 14, ¶¶15-19, ¶26 and Count I; *see also Anderson v. United States*, 317 F.3d 1235, 1236 (11th Cir. 2003) (finding admiralty jurisdiction location test satisfied where a fighter jet dropped two bombs on an island during a training exercise, reasoning that the fighter jet qualified as "appurtenance" to the USS John F. Kennedy – the naval aircraft carrier that launched the fighter jet – and therefore holding that the plaintiff's injury was caused by a vessel on navigable waters); *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (assuming that federal admiralty jurisdiction existed and therefore federal admiralty law applied to tort claims arising from gang violence that killed a cruise passenger on land while at a cruise ship's port-of-call).

Notwithstanding the above, WHG argues Plaintiff cannot satisfy the location test because she was injured on land. [ECF No. 37, pg. 8]. WHG's argument is countered by the well settled case law in this Circuit and District. *See e.g. Anderson*, 317 F.3d 1235, 1236 (admiralty jurisdiction for injury on an island); *Chaparro*, 693 F.3d at 1336 (admiralty jurisdiction for injury on land at port of call); *Balaschak*, 2009 WL 8659594, at *4 (S.D. Fla. 2009) (admiralty jurisdiction for injury on land during a cruise ship shore excursion). The *Goodwin v. Rios Tropicales, S.A.,* WHG relies upon, [ECF No. 37, pg. 18], is inapposite as that case failed the admiralty location test because there the plaintiff was injured in a *river,* which was not considered a navigable waterway; and therefore the plaintiff's injury was not caused by a vessel operated in *navigable* water. *Goodwin v. Rios Tropicales, S.A*, 2006 WL 8426843, at *4 (S.D. Fla. 2006) ("I see no reason to find the River Reventazon navigable merely because it sustains some kind of commercial activity. In order to be considered a navigable water, the river's physical characteristics must permit it to

be used on a much larger scale than merely for-profit white water rafting tours"); *cf.* 1 Thomas J. Schoenbaum, Admiralty & Maritime Law § 3-3 (4th ed. 2006) ("The test of navigability is the capability of a waterway to be used in commerce, defined as activity relating to the business of shipping."). In this case, however, Plaintiff specifically alleged that Classica operated the subject cruise vessel in "navigable water", as it transported Plaintiff from West Palm Beach, Florida, to the Bahamas, and back. [ECF No. 14, ¶¶15-18].

The two remaining inquiries with respect to the incident's connection with maritime commerce and activity are also met.[3] As to the first issue, Plaintiff was injured at a scheduled port stop for the subject cruise, [ECF No. 14, ¶¶15-21]; and when a passenger is injured on a shore excursion, it has the potential to impact the number of excursions purchased by passengers, thereby affecting maritime commerce. *See Balaschak*, 2009 WL 8659594, at *4 ("The cruise line industry is maritime commerce. . . . Shore excursions attract passengers to participate in cruises and are an integral part of the cruise-line industry." With respect to the second issue, the general character of the activity giving rise to the incident here is, among other things, Classica's alleged negligence in failing to warn its passengers of the dangers of being sexually assaulted at the Resort Classica recommended and took Plaintiff to as part of the cruise, [ECF No. 14, ¶¶22-26 and Counts I-II]. Classica's alleged breach is substantially related to a traditional maritime activity. *See Belik v. Carlson Travel Grp., Inc.*, Case No. 11-cv-21136-CMA, ECF No. 236, pgs. 7-10 (conducting a similar admiralty jurisdiction analysis; finding admiralty jurisdiction over a similar fact pattern).

With regard to the remaining defendants, including WHG, the Court should note that if it has admiralty jurisdiction with respect to one particular defendant, it has admiralty jurisdiction over an *entire* case, even when non-maritime claims — which arise from the same operative facts, as is the case here — are brought in the same suit. See *Roco Carriers, Ltd. v. M/V Nurnberg Express*, 899 F.2d 1292, 1296–97 (2d Cir. 1990) ("[A]dmiralty jurisdiction extends to an entire case, including non-admiralty claims against a second defendant.") (*citing Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1409 (9th Cir. 1989); *Osborn v. Bank of U.S.*, 22 U.S. (9 Wheat.) 738, 822–23 (1824))); *see also Ortega v. Schramm*, 922 F.2d 684, 693 n.9 (11th Cir. 1991) (recognizing that

---

[3] The *Doe* Court explained that with respect to the connection test, two issues must be considered: "(1) whether, upon assessment of the general features of the type of accident involved, the 'incident has a potentially disruptive impact on maritime commerce;' and (2) 'whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.'". *Doe,* 394 F.3d at 900.

pendent party jurisdiction is allowed in admiralty cases under the language of 28 U.S.C. section 1333(1)). Thus, even if Plaintiff's claims against WHG are not purely maritime, the Court properly has admiralty jurisdiction over WHG. For these reasons, the Court should find that it maintains admiralty jurisdiction over this entire case. *See also Belik v. Carlson Travel Grp., Inc.*, Case No. 11-cv-21136-CMA, ECF No. 236, pgs. 7-10 (finding same).

In *Belik*, a similar fact pattern was addressed in that a plaintiff was a Carnival cruise passenger, and the passenger got injured on land at a Mexican port stop at a Senor Frog restaurant, and the Senor Frog defendants moved to dismiss on *forum non conveniens* grounds, arguing that the plaintiff's claims against them were not governed by general maritime law. *Belik,* 26 F. Supp. 3d at 1274. The district court explained that "the threshold issue the Court must address in its *forum non conveniens* analysis is whether United States maritime law should apply to the Senor Frog's Defendants." *Id.* The court then conducted a choice of law analysis, and under similar facts as those presented here, the *Belik* court found that the choice of law analysis favored application of U.S. law. *Id.* at 1283. In the subsection below, Plaintiff explains the *Belik* court's choice of law analysis, as the fact pattern in that case is striking similar to the fact pattern here, and therein, Plaintiff explains why the choice of law analysis here favors application of U.S. law to WHG and why their *forum non conveniens* position therefore fails.

### b.  A choice of law analysis in this case favors application of U.S. law to WHG, and their *forum non conveniens* position therefore fails.

In *Lauritzen v. Larsen,* 345 U.S. 571 (1953), the U.S. Supreme Court identified seven relevant choice of law factors: the (1) place of the wrongful act, (2) law of the flag, (3) allegiance or domicile of the injured, (4) allegiance of the defendant shipowner, (5) place of contract, (6) inaccessibility of a foreign forum, and (7) law of the forum. *Lauritzen,* 345 U.S. 571, 582–93. In addition, courts must also consider whether the defendant has a base of operations in the United States. *See Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 309 (1970). These eight factors are not an exhaustive list, and the test is not a mechanical one. *See Szumlicz,* 698 F.2d at 1195. The Eleventh Circuit has made clear that "when confronted with making a choice between applying federal maritime law and the law of a foreign country," courts are to examine the *Lauritzen* and *Rhoditis* non-exhaustive list of factors. *Cooper v. Meridian Yachts, Ltd.,* 575 F.3d 1151, 1174 (11th Cir. 2009). For this case, Plaintiff outlines the relevant factors here and explains why they favor application of U.S. law.

i.        **Place of wrongful act:** *Favors application of U.S. law*

Plaintiff has brought two negligence claims against WHG. ECF No. 14, Count III (General Negligence) and Count IV (Negligent Failure to Warn). In factual support of these claims against WHG, Plaintiff alleged that WHG is a U.S.-based "business entity incorporated in Delaware with its principal place of business in New Jersey" and that "as a condition of WHG allowing the Resort to use the "Wyndham" name, WHG, directly or indirectly, set and/or enforced "Wyndam" Brand Standards for the Resort to follow in operating the Resort, and WHG required the Resort and/or its employees to undertake "Wyndham" training. As such, WHG exercised a high degree of control over the Resort and/or its operation." [ECF No. 14, ¶6].

Here, the place of the wrongful act occurred in the U.S., even though Plaintiff was assaulted in the Bahamas. This is because WHG enforced the "Wyndham" standards[4] that the Resort needed to follow from WHG's U.S. base of operations. *See, e.g., Cooper,* 575 F.3d at 1175 (finding that the place of the wrongful act is not where the defect in the foodlift manifested itself, but rather where the foodlift was manufactured and installed); *Reino de España v. Am. Bureau of Shipping, Inc.,* 691 F.3d 461, 467 (2d Cir. 2012) ("The 'place of the wrongful act is not where the vessel sinks, but where the negligence [or recklessness] occurs.'"). The place of the wrongful act factor favors application of U.S. law.

ii.       **Allegiance or domicile of the Plaintiff:** *Favors application of U.S. law*

The parties agree that Plaintiff is a United States citizen and a resident of Missouri. *Compare* ECF No. 14, ¶1 *with* ECF No. 37, pg. 4, ¶5. Thus, this factor points toward the application of United States law. *See Belik,* 26 F. Supp. 3d at 1278 (similar).

iii.      **Allegiance or domicile of the Defendant:** *Favors application of U.S. law*

Similarly, WHG is a U.S.-based corporation. ECF No. 14, ¶6. Thus, this factor points toward the application of United States law.

iv.       **Place of contract:** *Favors application of U.S. law*

The relevant contracts for the Court to examine here are the ones relevant to Plaintiff supporting her negligence claims against WHG. *See Belik,* 26 F. Supp. 3d at 1279 ("The contract

---

[4] A reasonable inference is that Wyndham's brand standards included a standard that Resort employees are prohibited from unlawful touching of and/or sexual contact with Resort guests.

or contracts the Court considers under this factor must be relevant to the policy of permitting Plaintiff's negligence and third-party beneficiary claims against the Señor Frog's Defendants.").

Here, Plaintiff did not contract directly with WHG in connection with her stay at the Resort. But when Plaintiff did contract to stay at the Resort, she did so from within the U.S. *See* ECF No. 14, ¶1 (explaining Plaintiff is a U.S. citizen) and ¶19 (explaining that Classica communicated with Plaintiff and/or her traveling companion to understand their travel preferences, before booking them for the Resort). Further, Plaintiff specifically alleged that "Defendants, Club Viva and Classica, used their respective <u>Florida offices</u> to solicit, arrange and transfer money for Plaintiff's guest reservation at the Resort." [ECF No. 14, ¶8]. As such, the place of contract factor weighs in favor of applying U.S. law.

Also relevant here is the fact that Plaintiff is bound by a <u>Florida, U.S. forum selection clause</u>, as part of Plaintiff's cruise aboard Defendant, Classica's cruise vessel. [ECF No. 14, ¶3]; *see also* Plaintiff's ECF No. 28-1, an exemplar of Defendant, Classica's forum selection clause, at pg. 20, ¶9.[5] In other words, the following facts and circumstances explain the significant connection between the Classica forum selection clause and Plaintiff's negligence claims against WHG: i) the business and/or contractual relationship between the cruise operator Classica and the Resort -- which used the "Wyndham" tradename; and ii) Plaintiff's allegation that she decided to participate in the cruise to a "Wyndham" named resort because the "Wyndham" name made her feel safe. *See* ECF No. 14, ¶8 and ¶19.

In *Belik*, the court also found that a cruise passenger's U.S. forum selection agreement with Carnival cruise lines was relevant to the plaintiff's claims against the Mexican restaurant defendants. *Belik v. Carlson Travel Grp., Inc.,* 26 F. Supp. 3d at 1280–81 ("… Belik's ticket contract with Carnival … is relevant to the Court's analysis of Belik's third-party beneficiary claim

---

[5] The ticket contract provides at relevant part:

> [I]t is agreed by and between the Passenger and Carrier that all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Passenger's cruise, including travel to and from the vessel, <u>shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Palm Beach</u>… to the exclusion of the Courts of any other county, state or country. Passenger hereby consent to such exclusive jurisdiction and waives any jurisdictional, venue or other objection that may be available.

*Id.* at pg. 20, ¶9. Plaintiff reserves the right to contest the applicability of any other ticket terms.

against the Señor Frog's Defendants. Thus, the place of Belik's ticket contract with Carnival—the United States—will be considered in the Court's choice of law inquiry."). For similar reasons, Plaintiff's Florida, U.S. forum selection agreement with Classica is relevant to her claims against WHG, and this U.S. forum selection agreement is further support for application of U.S. law here.

>    **v.**    **Accessibility to the foreign forum:** *Irrelevant factor*

The parties here do not assert that this Court is incapable of applying the law of Bahamas to this case, if it were to apply. Accordingly, "any potential inaccessibility of [the] foreign forum [is] irrelevant." *Reino de España,* 691 F.3d at 467 n. 8; *Belik,* 26 F. Supp. 3d at 1281 (same). Further, this factor is "more pertinent to a *forum non conveniens* test than to a choice of law analysis." *Cooper,* 575 F.3d at 1175 n. 14.

>    **vi.**    **Law of the forum:** *Favors application of U.S. law*

For this factor, "it is the forum's own law to which the inquiry references." *Belik*, 26 F. Supp. 3d at 1282 (citing *Lauritzen,* 345 U.S. at 590) ("It is urged that, since an American forum has perfected its jurisdiction over the parties and defendant does more or less frequent and regular business within the forum state, it should apply its own law to the controversy between them."). Here, like the plaintiff in *Belik,* Plaintiff did not voluntarily submit herself to the Southern District of Florida. The court in *Belik* explained this point as it relates to the forum selection clause the plaintiff agreed to with the cruise line defendant, finding again the forum selection clause to be relevant to the land-based defendant as well:

> Plaintiff did not voluntarily submit himself to the Southern District of Florida. Belik is a resident of New York and has travel limitations due to his injuries. Belik has brought the action in this forum pursuant to his ticket contract with Carnival, which requires that suit be filed against Carnival only in this District. Although the forum selection clause contractually binds only Plaintiff, Carnival, and SinglesCruise, the Court does not ignore the litigation realities faced by Plaintiff. Preservation of Plaintiff's resources and judicial economy would likely counsel that Plaintiff's action against all Defendants be brought in the same forum. … the Court will afford this factor some weight and finds that it tips in favor of applying United States law.

*Belik*, 26 F. Supp. 3d at 1282. The same result should follow here.

>    **vii.**    **Defendant's base of operations:** *Favors application of U.S. law*

WHG does not dispute it is a U.S.-based business entity. *Cf.* ECF No. 37, pg. 4, ¶6 *with* ECF No. 14, ¶6. This factor easily favors application of U.S. law. *See also e.g. Taurus Int'l Mnfg.,*

*Inc. v. Friend*, 217 So.3d 1133 (Fla. 3d DCA 2017) ("[a] forum non conveniens argument coming from a party sued where he resides is both puzzling and strange.")**.**

        **viii.**     **Totality of the circumstances:** *Favors application of U.S. law*

On balance, an analysis of the foregoing factors demonstrates that WHG's U.S.-base of operations, law of the forum, Plaintiff's forum selection agreement with Defendant, Classica, and Plaintiff's U.S. citizenship, outweigh all other relevant factors, and forcefully points to the application of U.S. law in this case. As such, the Court should find that U.S. law applies to Plaintiff's claims against WHG, and the Court should therefore not dismiss WHG on *forum non conveniens* grounds. *See Belik*, 26 F. Supp. 3d at 1283 (similar analysis, same holding). The Court's analysis of WHG's motion to dismiss should end here, with denial of that motion.

    **III.**    **A traditional *forum non conveniens* analysis compels a conclusion that Plaintiff's claims against WHG should not be dismissed.**

Notwithstanding the above choice of law analysis, even a traditional *forum non conveniens* compels the conclusion that Plaintiff's claims against WHG should not be dismissed. It is significant that WHG concedes that it is important to resolve all claims in a single proceeding, [ECF No. 37, pg. 11]. Here, Plaintiff and Defendant, Classica are bound by a forum selection clause requiring that Plaintiff's claims can only be brought in this District, [ECF No. 28-1], and Classica has already filed an Answer in this case, [ECF No. 23]. So, this case is partly "at issue" before this Court, and WHG highlighting the importance of having a single forum and proceeding to resolve all of Plaintiff's claims undermines WHG's own *forum non conveniens* position.

To continue, the starting point for a *forum non conveniens* analysis is accepting that there is a strong presumption in favor of the plaintiff's initial forum choice. *See Gulf Oil,* 330 U.S. 501, 508 (1947) (finding "unless the balance [of interests] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"). The presumption in favor of the plaintiff is strongest when the plaintiff is a citizen or resident of the United States -- which Plaintiff is. *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.,* 382 F.3d 1097, 1101-04 (11th Cir. 2004) ("Yet, we have been clear that '[t]here is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction.'").

Further, the Eleventh Circuit mandates that when a plaintiff is a U.S. citizen, like the Plaintiff here, [ECF No. 14, ¶1], district courts must "require <u>positive evidence</u> of <u>unusually</u>

extreme circumstances, and should be thoroughly convinced that <u>material injustice is manifest</u>, before exercising any such discretion as may exist <u>to deny a United States citizen access to courts of this country</u>." *SME Racks, Inc.*, 382 F.3d at 101-02, n. 6 (11th Cir. 2004). Such is the rule because a U.S. citizen who brings suit in their home country is entitled to strong deference in their choice of forum. *Id.* at 1101. "That deference and that presumption do not dissolve just because the plaintiff's injury occurs outside of the United States." *Prophet v. Int'l Lifestyles, Inc.*, 447 F. App'x 121, 125 (11th Cir. 2011).[6] Here, WHG presents this Court with no positive evidence at all of any such material injustice in maintaining this case here; instead, WHG advances to this Court only speculation and conjecture as to what evidence may be important in the case.

In determining whether to dismiss a case based on the doctrine of *forum non conveniens*, the Court must: (1) decide whether an adequate alternative forum exists which has jurisdiction over the case, (2) weigh the private interest factors of the parties with a presumption in favor of the plaintiff's initial forum choice, (3) if the balance of private interests is at or near equipoise, determine if the factors of public interest favor a trial in the foreign forum, and (4) assess whether the plaintiff can reinstate suit in the alternative forum without undue inconvenience or prejudice. *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310–11 (11th Cir. 2001).

### a. Factor 1: The Bahamas is not an adequate alternative forum that has jurisdiction over the entire case.

The Bahamas is not an adequate alternative forum because that forum would not have jurisdiction over the entire case, and Plaintiff will suffer irreparable prejudice if required to litigate her claims against WHG there. Specifically, the Bahamas would not have jurisdiction over Defendant, Classica, because Classica and Plaintiff contractually agreed to Florida as the forum for Plaintiff's claims. *See* ECF No. 28-1. Thus, Classica cannot submit itself to Bahamian jurisdiction in this case, and Classica has already filed an Answer in this case, ECF No. 23. Because Plaintiff's claims against WHG are intertwined with those against Classica, *see* Section II above, this factor favors maintenance of this claim before this Court.

---

[6] Defendant seems argue that the Court should give less weight to the Plaintiff's chosen forum because she is not a Florida resident. But the Eleventh Circuit has explained that an American plaintiff's "home forum" **is *the United States*** – not a particular federal district court. *Kostelac v. Allianz Global & Specialty AG*, 517 Fed. Appx. 670, 673-74 (11th Cir. 2013) ("When a United States citizen sues in a United States District Court, he is suing in his home forum").

**b.  Factor 2: The parties' private interest factors favor maintenance of this entire case before this Court.**

The private interests courts consider are: (a) the relative ease of access to sources of proof; (b) the cost of obtaining the attendance of willing witnesses and the ability to compel the attendance of unwilling witnesses; (c) the possibility of viewing the premises, if a view would be appropriate to the action; (d) the enforceability of a judgment in a forum; and (e) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Gulf Oil,* 330 U.S. at 508.

On this private interest factor, WHG only offers the Court speculation as to general category of witnesses may be important in the case, and on this flaw alone, WHG's *forum non conveniens* position fails. For example, WHG flatly argues that "the vast majority of witnesses, physical evidence, and key personnel are located in the Bahamas." [ECF No. 37, pg. 21]. But WHG does not specifically identify those witnesses WHG deems important, and WHG does not explain why they are important. Recall the U.S. Supreme Court's rule that the defendant invoking *forum non conveniens* "**bears the heavy burden** in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430 (2007), and here, WHG does not at all carry that burden as it fails to effectively explain to this Court which important witnesses for the case are *only* located in the Bahamas. *See Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1347 (11th Cir. 2020) (defendants failed to carry their *forum non conveniens* burden because they did not identify employees and other witnesses by name or position, and did not explain how the foreign witnesses testimony would be critical to the case); *Zelaya v. De Zelaya*, 250 Fed. App'x 943, 947 (11th Cir. 2007) (private factors must "be based on issues framed by the parties and an evidentiary record, not speculation as to what witnesses and documents might be relevant and where they might be located").

The reality is there is abundant evidence available within this District, and WHG knows of no important witnesses -- eyewitnesses or otherwise -- who are only based in the Bahamas.[7] Only Plaintiff and ASSAILANT 1 have direct, first-hand, personal knowledge as to the facts of the subject rape.[8] And Plaintiff has already subjected herself to this Court's jurisdiction, and Plaintiff

---

[7] The only exception here is ASSAILANT 1, who has yet to be identified, and it is unclear whether he even remains in the Bahamas.

[8] Plaintiff alleged that ASSAILANT 1 forced her into the theatre's control room, locked the door and then committed the rape. [ECF No. 14, ¶21]. So, there are no known eyewitnesses, other than

will testify in person at trial before this Court in Florida. Plaintiff's traveling companion on the subject trip, her sister who shared a Resort room and the cruise with her, is an Illinois resident, and would have relevant knowledge and testimony with respect to Plaintiff's claims and damages. Her sister is a U.S. citizen who will appear in person in this District for trial. Additionally, on August 7, 2023, Plaintiff went to a medical center in West Palm Beach, Florida,[9] following the subject rape, and that is a Florida-based medical facility with numerous witnesses who have personal knowledge of Plaintiff's claims and injuries, and documentary (medical) records, over which this Court can compel testimony and evidence. Plaintiff's Missouri medical records are also based in the U.S. Further, WHG's corporate representative is a U.S. citizen who will appear at trial in this case. In addition, Plaintiff specifically alleged that Defendant, Club Viva, processed Plaintiff's Resort stay through its Miami, Florida office, so Club Viva would have relevant evidence in Florida. *See* ECF No. 14, ¶7. As such, there are plenty of witnesses, who Plaintiff has specifically identified, over which this Court can compel attendance at trial or who will voluntarily appear. *Compare Belik,* 26 F. Supp. 3d at 1285 ("The Señor Frog's Defendants wholly fail to explain why testimony from witnesses who reside in the United States is insufficient to convey the nature of the accident."). Here, WHG has failed to identify anyone specific it needs testimony from in this case, located only in the Bahamas and over whom WHG has no control.[10]

Further, WHG laments that "testimony from the security guards who were on the Resort property at the time of the alleged incident will be critical to the Defendant's ability to challenge/rebut the Plaintiff's negligence claims." [ECF No. 37, pg. 15]. But WHG does not explain at all who those "security guards" are, or how their proposed testimony will be "critical"

---

Plaintiff and ASSAILANT 1. Further, ASSAILANT 1 has not yet been formally identified by name.

[9] For purposes of confidentiality and privacy, undersigned counsel does not specifically name the medical facility but confirms it is located in West Palm Beach, Florida. That is where the subject Classica cruise started and ended. [ECF No. 14, ¶18].

[10] Even if WHG *had* identified specific witnesses located in the Bahamas over which they cannot compel testimony, WHG has not explained why letters of request or letters rogatory cannot be sent to the appropriate Bahamian authority pursuant to the Hague Convention to assist them in securing depositions in Bahamas or obtaining other evidence. Recall it is WHG's "***heavy* burden**" to explain why this forum is substantially inconvenient. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430 (2007).

to WHG's defense. *Otto Candies, LLC*, 963 F.3d at 1347 (rejecting *forum non conveniens* because defendant did not explain how testimony of foreign witnesses would be critical to the case); *Zelaya*, 250 Fed. App'x at 947 (similar).[11] Here, WHG completely fails to carry its "heavy burden" to explain why this forum is substantially inconvenient. *Sinochem Int'l Co.,* 549 U.S. at 430.

WHG also argues "security camera footage" is only available in the Bahamas, [ECF No. 37, pg. 10], but WHG completely fails to confirm whether security footage of Plaintiff's incident (or anything else relevant) *even exists*, or what it purportedly shows. Again, WHG' *forum non conveniens* position relies upon speculation, and that is not a sufficient basis to carry WHG's burden. WHG also fails to explain why the specific scene of the rape cannot be explained to the factfinder through photographs. *Matthews v. Whitewater W. Indus.*, 2012 WL 1605184, at *9 (S.D. Fla. 2012) (denying *forum non conveniens* motion in part because "defendants have not met their burden in showing why the ... conditions of the Waterslide and Pool cannot be sufficiently presented to the jury through photographs"); *Sun Tr. Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1264 (S.D. Fla. 2001) ("Defendant has not alleged or established that there is anything unusual about the physical layout of the site that cannot be adequately and accurately depicted in photographs and diagrams"). *See also Belik,* 26 F. Supp. 3d at 1286-87 (finding private interests favored Florida court because plaintiff was a U.S. citizen and "obligated to file this action here pursuant to a contractual forum selection clause"); *Wagner v. Island Romance Holidays, Inc.,* 984 F. Supp. 2d 1310, 1316 (S.D. Fla. 2013) (denying a Jamaican resort defendant's *forum non conveniens* motion because, even though there were some witnesses in Jamaica, "[t]he Defendants fail to provide arguments that 'material injustice is manifest' such that the Court should be compelled to deny the Plaintiffs access to United States courts."). Lastly, WHG's argument that it will be prejudiced by its inability to implead ASSAILANT 1, [ECF No. 37, pg. 10], is misplaced because ASSAILANT 1 has not yet been identified. In other words, WHG has not established that he is not in the U.S., a U.S. citizen, or that this Court does not have subpoena power over him.

Because WHG has not explained to this Court the identity of any specific witnesses it will need at trial to defend Plaintiff's claims, who are only available in the Bahamas and whom WHG

---

[11] It is important to note that no one from the Bahamas or the Resort even responded to Plaintiff's incident, as she first sought medical care from medical professionals aboard Classica's cruise ship, and then medical professionals in West Palm Beach, Florida, as soon as she disembarked the cruise ship on August 7, 2023. In other words, Resort security personnel would have little to no personal knowledge as to Plaintiff's incident as no immediate investigation at the Resort was done.

has no control over, and WHG fails to explain any other specific evidentiary concerns that make this case substantially inconvenient to try before this Court, WHG has completely failed to carry its "**heavy burden** in opposing the plaintiff's chosen forum", *Sinochem Int'l Co.,* 549 U.S. at 430, and WHG's *forum non conveniens* fails and ends on this point alone.

   c.   **Factor 3: Because the balance of private interests is not at or near equipoise, the Court should not even consider whether public interest factors favor a trial in the foreign forum.**

   The public interest factors assessed include: (a) the administrative congestion resulting from cases being tried at a site other than their origin, (b) the forum's interest in the dispute, (c) the burden of jury duty on the community in which the court sits, and (d) difficulties associated with applying foreign law. *Gulf Oil,* 330 U.S. at 508–09. In evaluating the private and public interests implicated by the venue of the litigation, "the district judge must consider the level of deference to accord the plaintiff's choice of forum." Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3828 (3d ed. 2007).

   Here, the Court need not even address public interest factors, as explained above, because the balance of private interests heavily favors retaining the action before this Court. *Belik,* 26 F. Supp. 3d at 1287 (similar refusal to engage in a full consideration of public factors because the defendant failed to carry its burden on the private factors).

   Notwithstanding, Plaintiff makes three arguments here. First, United States law is applicable to this matter, (*see* Section II, above), which counsels against relegating Plaintiff's claims to adjudication in a foreign forum. Second, the Court's public interest analysis should begin with the understanding that Plaintiff is a U.S. citizen, and therefore, should not be ousted from a U.S. forum. *Wagner v. Island Romance Holidays, Inc.*, 984 F. Supp. 2d 1310, 1316 (S.D. Fla. 2013) ("On balance, therefore, the public interest factors do not cut in favor of dismissing this case. The primary factor driving this decision is the United States' interest in providing a forum for its citizens in which to seek redress for injuries caused by foreign defendants who are subject to U.S. jurisdiction"). Third, WHG dodges an analysis of the public interest factors with respect to the interests of the appropriate domestic forum—the United States—not merely Florida. *See Wilson,* 590 F.3d 1264 at 1271 (finding the district court improperly limited its consideration of *forum non conveniens* test to just one judicial district, as "[t]he relevant forum for purposes of the federal *forum non conveniens* analysis is the United States as a whole"). "Indeed, it would be

highly unfair for a plaintiff to be bound by a domestic forum selection clause, only to have his claims dismissed to a foreign forum by foreign defendants—who have a significant relationship with the defendant that contracted for the forum selection clause—due to any limited connection of the action to the selected domestic judicial district." *Belik,* 26 F. Supp. 3d at 1287. In view of the above circumstances, the Court should find that no "material injustice is manifest" by permitting the action against WHG to move forward in this venue. *Belik,* 26 F. Supp. 3d at 1287; *Wagner v. Island Romance Holidays, Inc.,* 984 F. Supp. 2d 1310, 1316 (S.D. Fla. 2013) (similar).

### d. Factor 4: Plaintiff cannot reinstate suit in the Bahamas without undue inconvenience or prejudice.

As explained above, the Bahamas is not an adequate alternative forum because that forum would not have jurisdiction over the entire case; the Bahamas would not have jurisdiction over Defendant, Classica, because Classica and Plaintiff contractually agreed to Florida as the forum for Plaintiff's claims. ECF No. 28-1. Thus, because Plaintiff would not be able to assert claims in the Bahamas against Classica, Plaintiff cannot reinstate suit in the Bahamas without undue inconvenience or prejudice. In other words, if the Court were to dismiss Plaintiff's claims against WHG on *forum non conveniens*, Plaintiff will suffer irreparable prejudice because she would need to litigate her claims in separate proceedings and in different forums. In conclusion, even a formal *forum non conveniens* compels a conclusion that the Court should not dismiss this action against WHG, and instead, the Court should maintain this action before this Court.

### IV. Plaintiff's claims against WHG are sufficiently pled.

#### a. Plaintiff's Amended Complaint is not a shotgun pleading.

WHG argues Plaintiff's Amended Complaint is a shotgun pleading on the basis that Counts III (General Negligence) and IV (Failure to Warn) are asserted collectively against WHG and other Resort Defendants responsible for the Resort's ownership and operation. [ECF No. 37, pg. 16]. WHG's argument misses the mark as the Eleventh Circuit has explained that "[t]he fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman,* 208 F.3d 940, 944 (11th Cir. 2000). Here, Plaintiff's Amended Complaint can be fairly read to aver that all Resort Defendants are responsible for the negligent operation of the Resort which caused Plaintiff's injuries. *State Farm Mut. Auto. Ins. Co. v. Health & Wellness Services, Inc.,* 389

F. Supp. 3d 1137, 1147 (S.D. Fla. 2018) ("[a] plaintiff properly pleads a cause of action against multiple defendants in one count when 'the allegations against [the] Defendants raise the same claims and relate to the same occurrences.")

WHG's main criticism is that the Amended Complaint does not allege what failure is specifically attributable to WHG as opposed to the other Resort Defendants. [ECF No. 37, pg. 16]. But a plain reading of the Amended Complaint belies WHG's argument. At paragraph 6 of the Amended Complaint, Plaintiff alleges WHG's specific involvement in the Resort's operation by explaining that WHG "set and/or enforced "Wyndam" Brand Standards for the Resort to follow in operating the Resort, and WHG required the Resort and/or its employees to undertake "Wyndham" training". [ECF No. 14, ¶6]. In addition, at paragraph 4, Plaintiff alleged with factual detail Defendant, Wyndham's involvement, at paragraph 5, Plaintiff alleged with factual detail Defendant, TMH's involvement, at paragraph 7, Defendant, Club Viva's involvement, and at paragraph 8, Defendant, Barbary's involvement. *See* ECF No. 14, ¶¶4-8. In each paragraph, Plaintiff provided specific facts differentiating the conduct of each Resort Defendant, precisely so that each Resort Defendant could understand the factual basis upon which Plaintiff seeks to hold them responsible for her injuries. Lastly, the nail in WHG's shotgun argument here is that at paragraph 20 of the Amended Complaint, Plaintiff went even further in alleging factual detail as to how exactly each Resort Defendant separate conduct played a part in operating the Resort and causing Plaintiff's injuries. *See* ECF No. 14, ¶20. In view of these allegations, Plaintiff very clearly distinguishes the conduct and responsibilities of each Resort Defendant named in the case, such that WHG and the other Resort Defendants can review Plaintiff's Counts III and IV with the understanding of which Defendant is responsible for what conduct. As such, Plaintiff's Amended Complaint is not a shotgun pleading.

### b.  Plaintiff's Amended Complaint is not a sham pleading.

Plaintiff's Amended Complaint is not a sham pleading because Plaintiff's claims against WHG are supported by factual allegations that WHG exercised a high degree of control over the Resort, and thus, assumed a duty of care for Plaintiff's safety and security while she was a guest at the Resort. To be clear, Plaintiff specifically alleged that WHG "set and/or enforced 'Wyndam' Brand Standards for the Resort to follow in operating the Resort, and WHG required the Resort and/or its employees to undertake 'Wyndham" training'". [ECF No. 14, ¶6]. This factual allegation plausibly supports a finding that WHG exercised a high degree of control over the Resort, and

thereby had sufficient control to prevent Assailant 1 from raping Plaintiff, as well as WHG potentially being held directly and vicariously responsible for same.

In fact, Florida courts have articulated a doctrine, known as the undertaker's doctrine, which holds that "whenever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service thereby assumes a duty to act carefully and to not put others at undue risk of harm." *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1365 (S.D. Fla. 2015) (Bloom, J.) (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)). Indeed, this doctrine is recognized as an "entrenched aspect of Florida tort law." *Wallace v. Dean*, 3 So. 3d 1035, 1051 (Fla. 2009); *see also* Restatement (Second) of Torts § 342A. Here, because WHG undertook a duty to set and/or enforce Wyndham's Brand Standards and training for the Resort, as Plaintiff alleged with factual detail at ECF No. 14, ¶6 and ¶20, WHG can be held responsible for the conduct of Assailant 1, the Resort employee who raped Plaintiff, because WHG failed to act reasonably under the circumstances and this failure caused Plaintiff's damages. *See* ECF No. 14, Counts III and IV.

Lastly, the Court should reject WHG's improper invitation that the Court look beyond the four corners of the Amended Complaint in deciding issues relative to the Fed. R. Civ. P. 12(b)(6) argument WHG raises here. WHG improper asks this Court to review its Affidavit, [ECF No. 22-1] and a Licensing Agreement to resolve a factual dispute as to whether WHG had control over the Resort sufficient to support liability against it for Plaintiff's claims. [ECF No. 37, pgs. 16-18]. However, Plaintiff has explained above the factual premises upon which she bases the duty of care WHG owed her, and contrary to WHG's improper invitation to this Court, "[a] Rule 12(b)(6) motion tests the sufficiency of a complaint; **it is not a vehicle to litigate questions of fact**." *Jumbo v. Ala. State Univ.*, 229 F. Supp. 1266, 1269 (M.D. Ala. Jan. 23, 2017).

Recently in *Roberts v. Carnival Corp.*, 824 F. App'x 825, 826 (11th Cir. 2020), the Eleventh Circuit reversed a district court for dismissing a case based upon a defendant's improper invitation to look beyond the four corners when resolving a Rule 12(b)(6) motion. In *Roberts*, the Eleventh Circuit explained:

> Ordinarily, the district court must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint and its attachments. *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125, 1134–35 (11th Cir. 2002). **So the court is ordinarily barred from considering facts not alleged in the complaint or documents attached to a motion to dismiss**. *See id.* But an exception to this rule applies if a document attached to the complaint is "referred to in the complaint,

central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018).

*Roberts v. Carnival Corp.,* 824 F. App'x 825, 826 (11th Cir. 2020). Here, that lone exception does not apply because Plaintiff did not attach any such Affidavit or Licensing Agreement to her Amended Complaint. So, for that reason, there is no basis for the Court to look beyond the four corners of the Amended Complaint at this motion to dismiss stage.

### c.  Plaintiff's failure to warn claim against WHG (Count IV) is supported by sufficient factual detail.

WHG's last argument is that Plaintiff's failure to warn claim (Count IV) against it is not supported by sufficient factual detail as to WHG's notice that employees of the Resort had a propensity for sexual assault. [ECF No. 37, pg. 18]. WHG's argument fails as Plaintiff's Amended Complaint alleges sufficient facts as to WHG's notice. ECF No. 14, ¶23-25 (notice allegations).

First, "a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Guevara v. NCL (Bahamas) Ltd.,* 920 F.3d 710, 720 (11th Cir. 2019). Here, Plaintiff alleged that in October 2016, a previous guest of the Resort was alleged gang raped by employees of the Resort, including security personnel. ECF No. 14, ¶23. This substantially similar prior incident is sufficient to impute WHG with notice of the alleged dangerous condition.

Second, a plaintiff can establish constructive notice with evidence that the "defective condition exist[ed] for a sufficient period of time to invite corrective measures." *Guevara,* 920 F.3d at 720. Here, the Resort allegedly employed sexually deviant employees in October 2016, and the same dangerous condition manifested itself when it caused Plaintiff's August 2023 incident. As such, the dangerous condition of the Resort employing sexually deviant employees existed for a sufficient period of time (since October 2016) for the Resort to invite corrective measures, and this allegation is similarly sufficient to impute WHG with notice. Yet, in further support of this allegation and notice avenue, Plaintiff specifically alleged that:

> The Resort's employees had a habit and/or practice of encouraging alcohol use to Resort guests and/or plying Resort guests with alcohol and tracking them while at the Resort, with a motive to sexually assault and/or rape them if they became vulnerable. Given that the Resort Defendants knew or should have known that their employees were fraternizing with Resort guests in an impermissible way on Resort premises and giving them alcohol, the Resort Defendants knew or should have known of the probability that the Resort Defendants' employees would sexually assault and/or rape Resort guests.

[ECF No. 14, ¶24(b)]. This allegation is important because it further explains, with factual detail, the ongoing habit of Resort employees, following the October 2016 prior incident, which should have invited WHG's corrective actions to remedy this dangerous condition.

Third, Plaintiff alleged that WHG "set and/or enforced 'Wyndam' Brand Standards for the Resort to follow in operating the Resort, and WHG required the Resort and/or its employees to undertake 'Wyndham' training'. [ECF No. 14, ¶6]. In enforcing Brand Standards and training, it is plausible, and the Court can reasonably infer, that WHG knew or should have known of the October 2016 prior incident and the Resort employee's ongoing habit since that time of encouraging alcohol use to Resort guests and/or plying Resort guests with alcohol and tracking them while at the Resort. To be sure of WHG's knowledge on this point, Plaintiff provided an excerpt of the October 2016 complaint at ECF No. 14, ¶23, and therein, and as alleged by Plaintiff, the Resort's General Manager responded online to the guest's incident complaint, thereby imputing the Resort with notice of this prior incident. It is thus reasonable to infer that WHG, in setting and/or enforcing Wyndham's Brand Standards and training  for Resort employees knew or should have known of this prior incident. *See e.g. Twyman v. Carnival Corp.,* 410 F. Supp. 3d 1311, 1322 (S.D. Fla. 2019) (Altonaga, J.) (noting that the plaintiff's allegation that a cruise line managed a cruise center supported the reasonable inference that the cruise line knew or should have known of dangerous conditions associated with a jet ski vendor operating at the cruise center).

Lastly, evidence that a defendant has taken corrective action can establish its notice of a dangerous condition. *Carroll v. Carnival Corp.,* 955 F.3d 1260, 1265 (11th Cir. 2020). Here, WHG's conduct in enforcing Wyndham's "training" and "Brand Standards", [ECF No. 14, ¶6], supports the reasonable inference that WHG took corrective action to prevent Resort employees from sexually assaulting Resort guests, as such employee conduct would be adverse to Wyndham's brand standards. In conclusion, Plaintiff alleged sufficient factual detail – whether facts are considered in isolation or considered in the aggregate – to support her failure to warn claim.

**WHEEREFORE**, Plaintiff respectfully request that this Honorable Court enter an Order denying Defendant, WHG CARIBBEAN HOLDINGS, INC.'s Motion to Dismiss, [ECF No. 37], in its entirety, in addition to any further relief this Court deems just and proper; including, but not limited to permitting Plaintiff to amend the Complaint should this Court deem any aspect is insufficiently pled.

Dated: September 16, 2024.

Respectfully submitted,

LIPCON, MARGULIES,
& WINKLEMAN, P.A.
*Attorneys for Plaintiff*
2800 Ponce de Leon Blvd., Suite 1480
Coral Gables, FL 33134
Telephone: (305) 373-3016
Facsimile: (305) 373-6204

By: */s/ Luis Alexander Perez*
    **LUIS ALEXANDER PEREZ**
    Florida Bar No. 125452
    aperez@lipcon.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 16, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

By: */s/ Luis Alexander Perez*
    **LUIS ALEXANDER PEREZ**

## SERVICE LIST
### Case No. 24-cv-80738-RLR/BER

| | |
|---|---|
| **Armando Rubio, Esq.** | **Darren W. Friedman, Esq**. |
| arubio@fieldshowell.com | dfriedman@fflegal.com |
| **Michael Redondo, Esq.** | **Lizbeth Michel, Esq.** |
| mredondo@fieldshowell.com | Lmichel-escandell@fflegal.com |
| **Tyler E. Sanchez, Esq.** | **Tyler J. Canfield, Esq.** |
| tsanchez@fieldshowell.com | tcanfield@fflegal.com |
| FIELDS HOWELL LLP | FOREMAN FRIEDMAN |
| 9155 S. Dadeland Blvd., Suite 1012 | 2 South Biscayne Boulevard, Suite 2200 |

| | |
|---|---|
| Miami, Florida 33156<br>Phone: 786-870-5610<br>Fax: 855-802-5821<br>*Attorneys for Defendants, Wyndham Hotels &*<br>*Resorts, LLC, TMH Worldwide, LLC, and*<br>*WHG Caribbean Holdings, Inc.* | Miami, FL 33131<br>Phone: 305-358-6555<br>Fax: 305-374-9077<br>*Attorneys for Defendant, Classica Cruise*<br>*Operator Ltd.* |