UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-80738-ROSENBERG

JANE DOE (E.W.),

    Plaintiff,

v.

CLASSICA CRUISE OPERATOR LTD.
d/b/a MARGARITAVILLE AT SEA,
WYNDHAM HOTELS AND RESORTS, LLC,
TMH WORLDWIDE, LLC,
WHG CARIBBEAN HOLDINGS, INC.,
CLUB VIVA INTERNATIONAL, INC.,
BARBARY BEACH DEVELOPMENT LIMITED
d/b/a VIVA FORTUNA BEACH BY WYNDHAM,
XYZ DEFENDANT(S),
and ASSAILANT 1,

    Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**THIS CAUSE** is before the Court on Defendant Wyndham Hotels and Resorts, LLC's ("Defendant") Motion to Dismiss [DE 21] Plaintiff Jane Doe (E.W.)'s Amended Complaint and Demand for Jury Trial [DE 14]. The Court has reviewed the Motion, Plaintiff's Response [DE 28], Defendant's Reply [DE 32], and the record and is otherwise fully advised in the premises. For the reasons set forth below, the Motion to Dismiss is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART** insofar as this case is **DISMISSED** for lack of subject matter jurisdiction.

**I.    BACKGROUND**

On August 2, 2024, Plaintiff Jane Doe (E.W.) ("Plaintiff") filed her Amended Complaint against Defendants, alleging claims sounding in tort. *See* DE 14. The claims arise from an alleged

rape or sexual assault that Plaintiff suffered when she was a guest at Viva Fortuna Beach by Wyndham (the "Resort") in the Bahamas during a stopover on Plaintiff's round-trip cruise from West Palm Beach, Florida to the Bahamas aboard the Margaritaville at Sea Paradise ship ("Margaritaville"). *See id.* ¶¶ 15–21.  Plaintiff asserts causes of action "aris[ing] under the General Maritime Law of the United States and Florida law, to the extent there is no conflict with General Maritime Law" against Defendants. *Id.* ¶ 12.

Plaintiff asserts that the Court has subject matter jurisdiction over this case based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 and, alternatively, based on admiralty jurisdiction pursuant to 28 U.S.C. § 1333. *Id.* ¶ 11.  Defendant argues for dismissal pursuant to the *forum non conveniens* doctrine and, alternatively, as an impermissible shotgun pleading.[1] *See* DE 21.

A federal court must have subject matter jurisdiction to decide cases before it, and a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking. *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).  The Court thus first addresses whether this case arises under admiralty jurisdiction.

## II. ADMIRALTY JURISDICTION

A federal court has an independent duty to ensure admiralty jurisdiction exists before applying admiralty law. *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 900 (11th Cir. 2004).  A party seeking to invoke federal admiralty jurisdiction over a tort claim must satisfy a two-prong test. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). First, the activity from which the claim arises must satisfy a condition of location—that is, the tort

---

[1] The Court rejects Defendant's shotgun-pleading argument and concludes that no discussion on the topic is necessary.

2

must have occurred on navigable water, or the injury suffered on land must have been caused by a vessel on navigable water. *In the Matter of the Complaint for Exoneration from or Limitation of Liability by Heritage Oaks*, No. 23-CV-81197, 2013 WL 1663333 (S.D. Fla. Feb. 8, 2024) (hereinafter *Heritage Oaks*) (citing *Grubart*, 513 U.S. at 534).  Second, the activity must have a sufficient connection with maritime activity, meaning that the general features of the incident involved have a potentially disruptive impact on maritime commerce and that the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.  *Doe*, 394 F.3d at 900 (quoting *Grubart*, 513 U.S. at 534).

In her Amended Complaint, Plaintiff describes the events from which her claims arise as follows. DE 14.  Plaintiff was a paying passenger on the Margaritaville at Sea Paradise cruise ship, which was a round-trip cruise between West Palm Beach, Florida and the Bahamas that was operated by Defendant Classica Cruise Operator Ltd. ("Classica"). *Id.* ¶¶ 15–18.  As part of Plaintiff's cruise, Plaintiff alleges that Classica made shoreside hotel arrangements for Plaintiff to stay at the Resort in the Bahamas. *Id.* ¶ 19.  Plaintiff alleges that during her stay at the Resort, a Resort employee

> . . . tracked Plaintiff while she was a guest at the Resort, using his special status as a security provider of the Resort, and when Plaintiff left her room at night to get a drink of water, ASSAILANT 1 used his status as a security provider at the Resort to force Plaintiff into the control room for the Resort's theatre, locked the door, and then raped the Plaintiff.

*Id.* ¶ 21.  Plaintiff argues that her "allegations satisfy the [admiralty] location test because this case concerns, in part, a cruise operator's (i.e. Classica) obligations to its passengers with respect to a scheduled port of call." DE 28 at 4.  In support of her argument, Plaintiff principally relies on a quotation from *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891 (11th Cir. 2004), that reads, "Where a passenger or cruise vessel puts into numerous ports in the course of a cruise, these stopovers are

3

the *sine qua non* of the cruise." *Id.* Plaintiff therefore argues that, pursuant to *Doe*, her stay at the Resort should be considered part of her cruise over water—a basis for admiralty jurisdiction.

This Court is familiar with *Doe*, and it has previously explained that "*Doe* involved an extreme set of facts," particularly given the Eleventh Circuit's clarification that *Doe* represented "the outer boundaries of admiralty jurisdiction." *Heritage Oaks*, No. 23-CV-81197 (quoting *Doe*, 394 F.3d at 901). In *Doe*, which concerned a sexual assault at a cruise's scheduled port-of-call, the incident passed the location test for admiralty jurisdiction because the incident "effectively began and ended aboard the cruise ship." 394 F.3d at 901. The *Doe* plaintiff had sued the cruise-line defendants in tort, including on theories of negligence. *Id.* at 894. The plaintiff was a cruise-ship passenger who asked a crewmember, assigned to wait on her table every night for the duration of her cruise, for suggestions on a place to visit in Bermuda during a scheduled port-of-call. *Id.* at 897. The crewmember suggested a nearby club where cruise ship passengers and crewmembers routinely socialized. *Id.* The crewmember and the passenger visited the club together, and after their visit to the club, the passenger agreed to the crewmember's offer to escort her back to the ship, trusting him due to his status as an employee of the cruise ship. *Id.* at 898. On the walk back to the ship, the crewmember sexually assaulted the passenger. *Id.* The Eleventh Circuit explained in detail why the specific facts of the case passed the location test for admiralty jurisdiction:

> The sexual battery occurred very close to the docked ship, and neither the victim passenger nor the crew member left the port-of-call or traveled any real distance from the ship. As demonstrated by the facts of this case, when docked at the port-of-call, the cruise ship allowed passengers to come and go from the ship as they elected; consequently, there was little practical difference between the port-of-call and other parts of the ship—they were, at all times, equally accessible to passengers. Indeed, the ship literally cast a long shadow; it was close by and visible from the [club]. It is thus not surprising that passengers and crew members routinely went back and forth between the [club] and the ship, and routinely socialized together at the [club].

4

> The necessary precursors for this sexual battery occurred while the ship was on navigable waters; that is, it would not have occurred if the ship had not assigned [the crewmember] to be [the passenger]'s waiter or if [the crewmember] had not directed [the passenger]'s group to attend this particular bar within eyeshot of the ship on that fateful night. And the incident did not end until [the crewmember] and [the passenger] returned to the ship and parted ways.

*Id.* at 901–02 (citations omitted).

Plaintiff argues that her allegations satisfy the location test "because this case concerns, in part, a cruise operator's (i.e. Classica) obligations to its passengers with respect to a scheduled port of call." DE 28 at 4. But if this Court were to accept Plaintiff's argument, virtually every activity in a port of call would easily qualify for admiralty jurisdiction; moreover, *Doe* should have been decided as an easy case. But *Doe* was not easily decided—the Eleventh Circuit went to great lengths to explain why the unique, case-specific facts in *Doe* qualified for admiralty jurisdiction.

Here, unlike in *Doe*, the necessary precursors giving rise to the tort did not begin[2] aboard a vessel on navigable waters. *Doe*, 394 F.3d at 901; *see also Grubart*, 513 U.S. at 527 (requiring that an injury suffered on land be caused by a vessel on navigable water for admiralty jurisdiction to lie). The underlying incident giving rise to Plaintiff's cause of action was an alleged assault committed on a Bahamian resort, by a Bahamian employee of that resort, while Plaintiff was a guest staying at that resort. *See* DE 14. Plaintiff has alleged no facts indicating that, like *Doe*, "there was little practical difference between the port-of-call and other parts of the ship." *Doe*, 394 F.3d at 901. Plaintiff has alleged no facts indicating that the alleged assailant had any connection to Classica or the Margaritaville cruise. *See* DE 14. Plaintiff has alleged no facts indicating that the cruise exercised any control over the Resort or the alleged assailant. *Id.* Plaintiff's only

---

[2] Plaintiff purchased and paid for her stay at the Resort while she was on land, prior to boarding, as part of a package purchase with her ship's ticket—not while she was over water. DE 14 ¶¶ 15–19.

5

allegations connecting the Resort to the cruise concern the fact that the cruise operator, Classica, arranged for Plaintiff's accommodations at the Resort as part of Plaintiff's cruise package. *Id.* ¶ 19. Pursuant to this Court's reading of *Doe*, that is not sufficient.

The Court addresses one final matter on this subject. Plaintiff cites to *Balaschak v. Royal Caribbean Cruises, Ltd.*, No. 09-21196-CIV, 2009 WL 8659594 (S.D. Fla. Sept. 14, 2009), in support of her argument that "courts have typically found that injuries suffered by cruise ship passengers while on shore excursions are sufficient to satisfy the *Grubart* test and invoke admiralty jurisdiction." DE 28 at 4. In *Balaschak*, a cruise-ship-passenger plaintiff was injured in an auto accident on a shore excursion. *Balaschak*, 2009 WL 8659594 at *1. Utilizing a broad reading of *Doe*, the district court found that the crash on land satisfied the admiralty location test because the shore excursion (which ultimately resulted in the crash) had been purchased by the plaintiff when she was on the ship. *See id.* at *4.

But by that reasoning, almost every conceivable injury a passenger incurs on shore would qualify for admiralty jurisdiction, and this Court does not read *Doe* that broadly. Instead, the Eleventh Circuit rationalized its reasoning in *Doe* on the principle that "the standard of care that governs when a cruise line's crew member assaults a passenger should be uniform and not vary from port to port on a single cruise," and it was therefore important to the Eleventh Circuit that the injury had been inflicted by a crew member, and not by some other person such as a citizen of the country of the port of call. *See Doe*, 394 F.3d at 902. Indeed, the Eleventh Circuit treated the location of the injury in *Doe* as being on the ship itself, stating that "there was little practical difference between the port-of-call and other parts of the ship . . . ." *Id.* at 901. This Court does not view the Resort in the instant case as "being on the ship itself" and, unlike the trial court in *Balaschak*, this Court does not read *Doe* so broadly as to encompass any injury that flows from

6

the decision to leave the ship. Stated differently, if the assault by a crew member on land in *Doe* did, in the Eleventh Circuit's own words, "represent the outer boundaries of admiralty jurisdiction over torts," the assault in this case is outside of those boundaries. *Id.*

Because her claim does not satisfy the location test, Plaintiff has not met her burden as the party seeking to invoke jurisdiction, and admiralty jurisdiction does not apply. This Court next addresses the question of diversity jurisdiction.

### III.   DIVERSITY JURISDICTION

Because admiralty jurisdiction does not apply, diversity of citizenship is the sole basis for federal subject matter jurisdiction in this case. 28 U.S.C. § 1332(a). "Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). To determine diversity jurisdiction, "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). A corporation is considered a citizen of every state in which it has been incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1224 (11th Cir. 2013).

Here, Plaintiff has sued Defendant TMH Worldwide, LLC ("TMH"), which Plaintiff states "is a business entity incorporated in Delaware with its principal place of business in New Jersey . . . ." DE 14 ¶ 5. Because TMH is a limited liability company and because Plaintiff has made no allegations concerning the citizenship of each of TMH's members, Plaintiff has not adequately pled complete diversity.

Because neither admiralty nor diversity jurisdiction have been adequately pled, this Court orders this case dismissed pursuant to Fed. R. Civ. P. 12(b)(1) due to lack of subject matter

jurisdiction.

## IV.   CONCLUSION

For all of the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant Wyndham Hotel and Resorts, LLC's Motion to Dismiss [DE 21] is **GRANTED IN PART** insofar as Plaintiff Jane Doe (E.W.)'s Amended Complaint [DE 14] is **DISMISSED** for lack of subject matter jurisdiction.  All other requests for relief in the Motion [DE 21] are **DENIED WITHOUT PREJUDICE** and all other pending motions to dismiss [DE 37, 38] are **DENIED AS MOOT**.

Plaintiff shall file an amended complaint on or before September 23, 2024.  To the extent multiple Defendants elect to respond to the amended complaint with a motion in lieu of an answer, the Defendants must confer and file a single, consolidated motion.  The Court also requires that in any future motion to dismiss or motion to transfer based on *forum non conveniens*, the movant(s) must fully brief the implications of Plaintiff's forum selection clause with Classica on the other Defendants and in the *forum non conveniens* analysis.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 16th day of September, 2024.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record