UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 24-cv-80738-RLR/BER

JANE DOE (E.W.),

     Plaintiff,

v.

CLASSICA CRUISE OPERATOR LTD.
d/b/a "*Margaritaville at Sea*",

WYNDHAM HOTELS AND RESORTS, LLC,

TMH WORLDWIDE, LLC,

WHG CARIBBEAN HOLDINGS, INC.,

CLUB VIVA INTERNATIONAL, INC.,

BARBARY BEACH DEVELOPMENT LIMITED
d/b/a "*Viva Fortuna Beach by Wyndham*",

XYZ DEFENDANT(S), and

ASSAILANT 1,

     Defendants.

_____/


**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS, [ECF NO. 49]**

Plaintiff, by and through undersigned counsel, hereby responds in opposition to Defendants' Wyndham Hotels & Resorts, LLC ("WHR"), WHG Caribbean Holdings, Inc. ("WHG"), TMH Worldwide, LLC ("TMH") and Classica Cruise Operator, Ltd. ("Classica"), Motion to Dismiss, [ECF No. 49]:

## <u>INTRODUCTION AND BACKGROUND</u>

1.      This lawsuit arises from a rape committed against Plaintiff. [ECF No. 45]. Specifically, Plaintiff was a passenger on a cruise and the cruise ship was operated by Classica. *Id.* at ¶16. As part of the cruise, Classica took Plaintiff from West Palm Beach, Florida, to Freeport, Bahamas, and back to West Palm Beach, Florida. *Id.* at ¶18. Also as part of the cruise, Classica recommended the Resort to Plaintiff and actively arranged her stay there. *Id.* at ¶19. In the Bahamas, Plaintiff stayed at the Resort which was owned, operated and/or managed by Resort Defendants. *Id.* at ¶20. While at the Resort, Plaintiff was raped by a Resort employee. *Id.* at ¶21.

2.      In Plaintiff's Second Amended Complaint, she asserts negligence claims against Defendants. *Id.* at Counts I-V.

3.      Plaintiff's claims against Classica arise from Classica's conduct in recommending the Resort to Plaintiff, arranging her stay there, and failing to warn her of dangers at the Resort known to Classica. *Id.* at ¶¶19, 23-24, 26; *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) ("… a cruise line owes its passengers a duty to warn of known dangers beyond the point of disembarkation in places where passengers are invited or reasonably expected to visit.").

4.      Plaintiff's claims against the Resort Defendants arise from their conduct in setting and enforcing "Wyndham" Brand Standards and "Wyndham" training at the Resort; and knowing of a prior sexual assault committed by Resort employees against a guest and failing to warn Plaintiff of same. ECF No. 45, ¶¶4-6, 20, 23, 25 and 26; *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) ("Whenever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service—i.e., the "undertaker"—thereby assumes a duty to act carefully and to not put others at an undue risk of harm").

5.      Defendants have filed a joint motion requesting the Court dismiss Plaintiff's claims against them based on *forum non conveniens* and failure to state a claim [ECF No. 49].

6.       In summary, Defendants' motion to dismiss on *forum non conveniens* grounds fails because: 1) the Court has subject matter jurisdiction over the case; 2) there is a Florida forum selection clause between Plaintiff and Classica; 3) Plaintiff is a U.S. citizen; 4) U.S. law applies to this case; and 5) the private interest factors of this case entirely favor a U.S. forum as Defendants have not identified any specific witnesses, critical to the case, only available in the Bahamas.

7.       The Court should deny Defendants' motion to dismiss as they have completely failed to carry their "**heavy burden** in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430 (2007).

## ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

### I.       The Court has subject matter jurisdiction over this case, pursuant to 28 U.S.C. § 1332, because the Parties are completely diverse.

While Defendants challenge this Court's exercise of admiralty jurisdiction, they do not contest this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Here the Parties are completely diverse. *See* ECF No. 45, ¶¶ 1-8. Thus, this Court has subject matter jurisdiction.

### II.       There is a forum selection agreement between Plaintiff and Classica, and for that reason alone, the Court should not dismiss this case for *forum non conveniens*.

At the outset, Plaintiff addresses the issue raised by the Court in its previous Order, [ECF No. 42, pg. 8], and what Plaintiff believes to be the critical flaw in Defendants' *forum non conveniens* challenge, which is that there is a valid forum selection agreement between Plaintiff and Classica that requires all of Plaintiff's claims against Classica be brought in this venue. The forum selection agreement specifically states:

9. JURISDICTION, VENUE, GOVERNING LAW, WAIVER OF JURY TRIAL AND WAIVER OF CLASS ACTION RELIEF

Jurisdiction, venue and Jury Trial Waiver. IT IS HEREBY AGREED THAT **ANY AND ALL CLAIMS, DISPUTES OR CONTROVERSIES WHATSOEVER ARISING FROM, RELATED TO, OR IN CONNECTION WITH THIS CONTRACT OR THE GUEST'S VOYAGE, <u>INCLUDING ANY ACTIVITIES ON OR OFF THE VESSEL</u> OR TRANSPORTATION FURNISHED THEREWITH**, WITH THE SOLE EXCEPTION OF CLAIMS SUBJECT TO BINDING ARBITRATION UNDER SECTION 10(C) BELOW, **SHALL BE COMMENCED, FILED AND LITIGATED, IF AT ALL, <u>BEFORE THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA IN PALM BEACH</u>**, OR AS TO THOSE LAWSUITS TO WHICH THE FEDERAL COURTS OF THE UNITED STATES LACK SUBJECT MATTER JURISDICTION, BEFORE A COURT OF

COMPETENT JURISDICTION IN PALM BEACH COUNTY, FLORIDA, U.S.A. TO THE EXCLUSION OF THE COURTS OF ANY OTHER COUNTRY, CITY, OR COUNTY WHERE SUIT MIGHT OTHERWISE BE BROUGHT. GUEST HEREBY CONSENTS TO SUCH EXCLUSIVE JURISDICTION AND WAIVES ANY JURISDICTIONAL, VENUE OR OTHER OBJECTION THAT MAY BE AVAILABLE. **IN THE EVENT THAT A MATTER IS BROUGHT IN THE FEDERAL COURTS OF THE UNITED STATES AND NO DIVERSITY JURISDICTION EXISTS, <u>THEN THE MATTER MUST PROCEED UNDER THE COURT'S ADMIRALTY JURISDICTION</u>**…

* * *

Governing Law. EXCEPT AS OTHERWISE SPECIFIED HEREIN, **ANY AND ALL DISPUTES WHATSOEVER ARISING OUT OF, RELATING TO, OR IN CONNECTION WITH THIS CONTRACT OR THE GUEST'S CRUISE, AS WELL AS THE INTERPRETATION, APPLICABILITY, AND ENFORCEMENT OF THIS CONTRACT <u>SHALL BE GOVERNED EXCLUSIVELY BY THE GENERAL MARITIME LAW OF THE UNITED STATES</u>**, WHICH SHALL INCLUDE THE DEATH ON THE HIGH SEAS ACT (46 USCS § 30302) **WITHOUT REGARD TO CHOICE OF LAW RULES, WHICH REPLACES, SUPERSEDES AND PREEMPTS ANY PROVISION OF LAW OF ANY STATE OR NATION TO THE CONTRARY**.

ECF No. 49-3, pgs. 24-25, Section 9 (capitalization in original, boldface and underline added).

It is disingenuous for Defendants to argue the forum selection agreement does not apply to off ship incidents, [ECF No. 49, pg. 17], when the agreement specifically states that it broadly applies to "any and all claims, disputes or controversies whatsoever arising from, related to, or in connection with this contract or the guest's voyage, **<u>including any activities on or off the vessel</u>** or transportation furnished therewith". ECF No. 49-3, pgs. 24-25, Section 9. From this language, it is clear Classica wanted the forum selection agreement to apply to off ship incidents. The forum selection clause also confirms that "**<u>general maritime law of the United States</u>**" will apply to the disputes between the parties. *Id.* As Classica drafted this forum selection agreement, this agreement, and any ambiguities in it, should be construed *against* Classica. *See e.g. Arriaga v. Fla. Pac. Farms, L.L.C.,* 305 F.3d 1228, 1248 (11th Cir. 2002).[1]

---

[1] Defendants argue that the ticket contract says it "shall include" periods of time when the "guest is on land while the Vessel is in Port", and based on this language, the ticket contract "appears to exclude Plaintiff's time on land from its scope". [ECF No. 49, pg. 19]. This argument is nonsensical. For one, the language used is not limiting, but in fact *broadening* language, in that it outlines occurrences which would fall within the ticket contract's application – but does not exclude occurrences which would fall outside of its application; and further, if this ticket contract is ambiguous, the ambiguities are construed against Classica.

While Defendants argue the ticket contract does not apply because Classica issued Plaintiff two different "Passenger Confirmation" pages – one for her trip to the Bahamas and one for her trip back – there is only one ticket contract, and that ticket contract applied to *both legs* of the roundtrip[2] cruise that occurred *on the same cruise vessel*. Defendants do not dispute this. Further evidence in support of this one admiralty ticket contract applying to Plaintiff's roundtrip cruise is that the ticket contract specifies that it applies to "transportation furnished" with the cruise, and Plaintiff specifically alleged that before she disembarked the vessel Classica gave her a transportation (shuttle) voucher to take her from the cruise, to the Resort, and back. *See* ECF No. 45, ¶28. Oddly, Defendants argue the cruise ticket contract is not an admiralty contract, [ECF No. 49, pg. 17], but such an argument is belied by unquestioned legal authority. *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14 (2004) (defining a maritime contract as one whose "primary objective" is to accomplish the transportation of something by sea); *Davis v. Valsamis, Inc.*, 752 F.App'x 688, 691 (11th Cir. 2018) ("Plaintiffs' ticket contract constitutes a maritime contract because its primary objective is to accomplish the transportation of passengers by sea"); *McIntosh v. Royal Caribbean Cruises Ltd.*, 2023 WL 10430780, at *6 (S.D. Fla. 2023) ("**There is no dispute that these ticket contracts qualify as maritime contracts that are subject to admiralty jurisdiction of the federal courts.**").

It is also odd for Defendants to argue that "the cruise line had no duty or responsibility to the Plaintiff during [her time off ship]", ECF No. 49, pg. 19, because the law in the Eleventh Circuit is very clear that "… a cruise line owes its passengers a duty to warn of known dangers beyond the point of disembarkation in places where passengers are invited or reasonably expected to visit." *Chaparro v. Carnival Corp.*, 693 F.3d 1333 (11th Cir. 2012). This point is buttressed by the fact that Classica undertook a duty to arrange Plaintiff's stay at the resort. [ECF No. 45, ¶19]. In other words, Classica always knew that Plaintiff would take its cruise to the Resort and back, and this knowledge triggered Classica's duty to warn her of dangerous conditions at the Resort.

Further, Defendants' *forum non conveniens* challenge is dead on arrival, given U.S. Supreme Court precedent. In *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49 (2013), the U.S. Supreme Court explained that an enforceable forum-selection clause carries near-determinative weight in a *forum non conveniens* analysis:

---

[2] For example, 49 C.F.R. § 1510.3 defines "Round trip" as "a trip on an air travel itinerary that terminates or has a stopover at the origin point (or co-terminal)".

> **When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation**. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.... As a consequence, a district court may consider arguments about public-interest factors only. **Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases**.

*Atl. Marine Const. Co.*, 571 U.S. at 64.

In summary, there is a binding Florida forum selection agreement between Plaintiff and Classica. Plaintiff is a U.S. citizen, [ECF No. 45, ¶1], and district courts "require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest, before exercising any such discretion as may exist to deny a United States citizen access to courts of this country." *SME Racks, Inc.*, 382 F.3d at 101-02, n. 6 (11th Cir. 2004). Lastly, Plaintiff complied with the forum selection clause and brought her claims against Classica *in its own backyard*.[3] "A *forum non conveniens* argument coming from a party sued where he resides is both puzzling and strange." *Taurus Int'l Mnfg., Inc. v. Friend*, 217 So.3d 1133 (Fla. 3d DCA 2017).

### III.    The Court has admiralty jurisdiction over the case because Classica's cruise vessel, while on navigable waters, caused Plaintiff an injury.[4]

This Court has admiralty jurisdiction over this case based upon a maritime tort and a maritime contract. Note at the outset that the Supreme Court has "**taken the expansive view of admiralty jurisdiction**". *Doe v. Celebrity Cruises, Inc.,* 394 F.3d 891, 901 (11th Cir. 2004) (citing *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 25 (2004)) ("… the shore is now an artificial place to draw a line. Maritime commerce has evolved along with the nature of transportation and is often inseparable from some land-based obligations" and noting it was "a maritime case about a trainwreck"); *McIntosh v. Royal Caribbean Cruises Ltd.*, 2023 WL 10430780, at *7 (S.D. Fla. 2023) (explaining that a personal injury case occurring during a cruise shore excursion will "easily satisfy" the admiralty location test).

---

[3] Classica's principal place of business is in Florida. *See* ECF No. 45, ¶3.

[4] Whether the Court has admiralty jurisdiction is an issue in the case because "[i]t is well established that a case should not be dismissed on *forum non conveniens* grounds if, in a case brought under the Court's admiralty jurisdiction, United States maritime law is applicable." *Belik v. Carlson Travel Grp., Inc.*, 26 F.Supp.3d 1258 (S.D. Fla. 2012) (citing *Szumlicz v. Norwegian Am. Line, Inc.,* 698 F.2d 1192, 1195 (11th Cir. 1983)).

**a. This Court has admiralty jurisdiction in connection with Plaintiff's maritime tort claims against Classica.**

First, this case presents maritime tort claims against Classica because Plaintiff's injuries suffered on land ***were caused by a vessel on navigable water***. "[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of <u>location</u> and of <u>connection with marine activity</u>." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co*., 513 U.S. 527, 534 (1995).

The *Grubart* location and connection test requires that the following conditions exist for there to be admiralty jurisdiction: (1) "the tort occurred on navigable water or [the] injury suffered on land was caused by a vessel on navigable water"; (2) "the incident has a potentially disruptive impact on maritime commerce"; and (3) "the general character of the activity giving rise to the incident shows a substantial relationship to traditional marine activity." *Grubart*, 513 U.S. at 534. Plaintiff's tort claims against Classica satisfies these three conditions.[5]

First, as to location, Classica's vessel <u>while on navigable waters</u> caused Plaintiff's injury when Classica, during its conduct in transporting Plaintiff by sea, breached the duty it owed Plaintiff by failing to warn her of dangers known to Classica at the port of call and Resort to which Classica transported her. [ECF No. 45, ¶¶23-24, 26-29]. For example, Plaintiff specifically alleged that "Classica had the opportunity to reasonably warn Plaintiff of these dangerous conditions while she was still on the vessel and before she disembarked at the scheduled port of call … when Classica gave Plaintiff, while she was still aboard the vessel, tickets to take a shuttle to transport her from the cruise ship to the Resort and back", *id.* at ¶28; and "while Plaintiff was on the vessel and when Classica's shipboard crewmembers promoted the Freeport area and the Resort to

---

[5] With respect to all other Defendants, other than Classica, the Court should note that if it has admiralty jurisdiction with respect to one particular defendant, it has admiralty jurisdiction over an *entire case*, even when non-maritime claims — which arise from the same operative facts, as is the case here — are brought in the same suit. See *Roco Carriers, Ltd. v. M/V Nurnberg Express*, 899 F.2d 1292, 1296–97 (2d Cir. 1990) ("[A]dmiralty jurisdiction extends to an entire case, including non-admiralty claims against a second defendant.") (*citing Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1409 (9th Cir. 1989); *Ortega v. Schramm*, 922 F.2d 684, 693 n.9 (11th Cir. 1991) (recognizing that pendent party jurisdiction is allowed in admiralty cases under the language of 28 U.S.C. section 1333(1)); *Belik v. Carlson Travel Grp., Inc.*, 26 F.Supp.3d 1258 (S.D. Fla. 2012).

Plaintiff … in that they told her what activities at the Resort she could try and that the Resort had security guards…" *id.* at ¶29. *See also id.* at ¶27 (causation).

The Eleventh Circuit has confirmed that "… a cruise line owes its passengers a duty to warn of known dangers beyond the point of disembarkation in places where passengers are invited or reasonably expected to visit." *Chaparro*, 693 F.3d at 1336. Here, Freeport and the Resort were places Classica knew or reasonably expected Plaintiff to visit during the cruise – principally because Classica transported Plaintiff there and arranged her stay at the Resort – and therefore, Classica had a duty to warn Plaintiff of the dangers it knew or should have known associated with the Resort. ECF No. 45, ¶¶23-24, 26-29 (notice allegations).

Because, Plaintiff has tied her injury to conduct of Classica's cruise vessel on navigable waters (i.e., Classica's shipboard failure to warn her of dangers), the location test is satisfied. *See e.g. Duluth Superior Excursion, Inc. v. Makela*, 623 F.2d 1251 (8th Cir. 1980) (finding admiralty jurisdiction for an off ship injury, after the cruise ended, based on the plaintiff's allegations that the vessel over-served alcohol during the cruise, which caused one passenger to attack another); *Anderson v. United States*, 317 F.3d 1235, 1236 (11th Cir. 2003) (finding admiralty jurisdiction location test satisfied where a fighter jet dropped two bombs on an island during a training exercise, reasoning that the fighter jet qualified as "appurtenance" to the USS John F. Kennedy – the naval aircraft carrier that launched the fighter jet – and therefore holding that the plaintiff's injury sustained on land was caused by a vessel on navigable waters).

In support of a finding that the Classica cruise vessel, while on navigable waters, caused Plaintiff injury on land, *see Ash v. Royal Caribbean Cruises, Ltd*., 2014 WL 2480612 at *5-6 (S.D. Fla. 2014) (admiralty tort location test satisfied relating to an auto accident on land while transporting cruise passengers for their shore excursion, in part because the cruise line promoted the excursion on the ship and failed to warn the plaintiff, while on the ship, of dangers with the excursion); *Balaschak v. Royal Caribbean Cruises, Ltd*., 2009 WL 8659594 at *4 (S.D. Fla. 2009) (same); *Isbell v. Carnival Corp.,* 462 F. Supp. 2d 1232, 1236 (S.D. Fla. 2006) (admiralty jurisdiction satisfied for a tort involving a cruise ship passenger bitten by a snake on land while touring a rain forest, in part because the cruise line promoted the excursion on the ship and failed to warn the plaintiff of dangers). The same finding that the admiralty location test is satisfied should follow here.

Relatedly, Plaintiff's maritime tort claims against Classica began and ended aboard the cruise ship. *See Doe v. Celebrity Cruises, Inc.,* 394 F.3d 891, 901 (11th Cir. 2004) (finding admiralty location test satisfied because the sexual assault committed against the cruise passenger on land at a port of call "effectively began and ended aboard the cruise ship"). Similarly here, the "necessary precursors for this sexual battery occurred while the ship was on navigable waters", because the incident giving rise to Plaintiff's injuries would not have occurred if Classica reasonably warned Plaintiff while on the cruise, and before she disembarked, of the dangers associated with the port of call and Resort, ECF No. 45, ¶27; and the incident did not end until Plaintiff returned to Classica's cruise vessel which transported her back to Florida. *See Doe,* 394 F.3d at 901-02 (using similar reasoning and facts to find admiralty jurisdiction satisfied).

The Eleventh Circuit in *Doe* explained that "[w]here a passenger or cruise vessel puts into numerous ports in the course of a cruise, these stopovers are the *sine qua non* of the cruise." *Doe,* 394 F.3d at 901 This case is similar to *Doe*, where the admiralty location test was satisfied where a cruise guest was sexually assaulted by a crewmember at a port of call, because Plaintiff here and the plaintiff in *Doe* were injured *while the cruise was still in progress*. *Doe* explains that a cruise voyage stop at a scheduled port-of-call is "an integral part of the on-going cruise or maritime activity" as "[p]orts-of-call not only add to the enjoyment of the cruise but form an essential function of the cruise experience". *Doe,* 394 F.3d at 901 ("…because of where the ships elect to *stop* … the destinations or ports-of-call are frequently the main attraction" of cruising).

The subject cruise was still in progress at the time of Plaintiff's incident, and the four nights Plaintiff spent on land during the cruise does not deprive this Court of admiralty jurisdiction, for these factual reasons: i) Plaintiff was issued only one ticket contract for the subject voyage; ii) Plaintiff's cruise was a roundtrip cruise, in that it took her from West Palm Beach, to the Bahamas, and back to West Palm Beach; iii) before disembarking the cruise, Classica gave Plaintiff a shuttle voucher to the Resort and back to the cruise ship; and iv) Classica actively arranged the cruise so that Plaintiff would have a stopover at the port of call and stay at the Resort. *See* ECF No. 45, ¶¶15-19, 28. As the Eleventh Circuit has explained, port stops during a cruise are considered "*sine qua non* of the cruise." *Doe,* 394 F.3d at 901.[6]

---

[6] *Sine qua non*: an essential condition; a thing that is absolutely necessary.

To address the Court's concern about the boundary of admiralty jurisdiction pertaining to land-based shore excursion, [ECF No. 42, pg. 5], it is not the case that *every* activity in a port of call must trigger admiralty jurisdiction; instead, only those injuries that are caused by a vessel in navigable water. So, there is a line separating claims that satisfy the admiralty tort location test and those that do not.[7]

Here, like *Doe*, there is little practical difference between Plaintiff being injured at the Resort and her being on the cruise ship, because Classica's duty to warn Plaintiff of the dangers of being sexually assaulted extended from the ship and to when Plaintiff was at the Resort, as a scheduled port of call; and when Plaintiff was injured, she was still a cruise passenger as her subject roundtrip cruise had not yet concluded. *See Doe,* 394 F.3d at 902 ("Jane Doe was no less a cruise passenger the moment she stepped off the ship at the port-of-call than she was the moment before she stepped off the ship").

Relatedly, Plaintiff alleges facts here that ASSAILANT 1 had a connection to Classica in that ASSAILANT 1 was furthering the business of the Resort and Classica by portraying to Plaintiff that he was on-site to provide security for Resort guests, including Classica cruise passengers. *See* ECF No. 45, ¶22.

Similarly, Classica had control over the decision whether to transport Plaintiff to Freeport, Bahamas and/or arrange her stay at the Resort – particularly in view of the information Classica knew or should have known about Freeport and the Resort. *See* ECF No. 45, ¶¶ 23-24. In view of that information, Classica could have decided *not* to transport Plaintiff there as part of her cruise, but Classica did so anyways; and Classica failed to warn Plaintiff of the dangerous conditions.

The Court in *Doe* explained the purpose behind exercising admiralty jurisdiction:

> More importantly, the purpose behind the exercise of this Court's admiralty jurisdiction is to provide for the uniform application of general maritime law. …. We see no reason that cruise lines' liability to their passengers while at a regularly-scheduled port-of-call and in a crew member's company should vary from port to port, especially given the potentially disruptive impact on maritime commerce. **Indeed, a ruling that admiralty jurisdiction did not extend literally beyond the gangplank in this case would upset the very uniformity that the Supreme Court has determined is so important for maritime activity**.

---

[7] For example, if a cruise passenger went to an area that the cruise operator *did not expect* the passenger to go – i.e. taking a taxi to another city neighboring the port of call, and was injured on that taxi ride – then the cruise line would have no duty to warn and there would be no admiralty jurisdiction in that case.

*Doe*, 394 F.3d at 902. Here, the Court's exercise of admiralty jurisdiction is warranted to maintain uniformity <u>as it relates to a cruise line's duty to warn passengers of dangers the cruise operator knows about at a scheduled port of call.</u>[8] *See e.g. Chaparro,* 693 F.3d at 1336 "… a cruise line owes its passengers a duty to warn of known dangers beyond the point of disembarkation in places where passengers are invited or reasonably expected to visit." Given this language from the Eleventh Circuit, Defendants' argument that Classica did not owe Plaintiff a duty of care (at least a duty to warn of known dangers), [ECF No. 45, pg. 4], clearly fails.

Based on *Doe,* it is well established that shore excursions connected to a cruise voyage are essential functions of the cruise experience. The following legal cases support this point: *Chaparro v. Carnival Corp.*, 693 F.3d 1333 (11th Cir. 2012) (applying maritime law where a cruise passenger was shot on land as a result of gang violence present in a port of call; holding that "… a cruise line owes its passengers a duty to warn of known dangers beyond the point of disembarkation in places where passengers are invited or reasonably expected to visit"); *Doe v. Celebrity Cruises, Inc.,* 394 F.3d 891 (11th Cir. 2004) (admiralty tort location test satisfied relating to a sexual assault of a passenger on land at a port of call; holding that a cruise ship's obligations to its passengers "extend literally beyond the gangplank"; "Ports-of-call not only add to the enjoyment of a cruise but form an essential function of the cruise experience"); *Ash v. Royal Caribbean Cruises, Ltd*., 2014 WL 2480612 (S.D. Fla. 2014) (admiralty tort location test satisfied relating to an auto accident on land while transporting cruise passengers for their cruise ship shore excursion); *Belik v. Carlson Travel Grp., Inc.*, 26 F.Supp.3d 1258 (S.D. Fla. 2012) (admiralty tort location test satisfied where a cruise passenger was injured while participating in a land-based shore excursion); *Balaschak v. Royal Caribbean Cruises, Ltd*., 2009 WL 8659594 (S.D. Fla. 2009) (admiralty tort location test satisfied relating to an auto accident on land while transporting cruise passengers for their cruise ship shore excursion).

For reasons similar to those outlined above, Defendants' reliance on *Goodwin v. Rios Tropicales, S.A*, 2006 WL 8426843, at *4 (S.D. Fla. 2006) is misplaced. In that case, the court refused to find the admiralty location test satisfied principally because the plaintiff was injured in

---

[8] Defendants confuse the issue here when they argue "The Eleventh Circuit's underlying concern for uniformity in maritime activity does not exist in this case against a Bahamian land-based operators", [ECF No. 45, pg. 10], because the uniformity concern is directed at "maritime activity" – which here is Classica brining Plaintiff to the Resort as a shore excursion as part of the cruise.

a *river,* which was not considered a navigable waterway; and therefore the plaintiff's injury was not caused by a vessel operated in *navigable* water. *Id.* at *4 ("I see no reason to find the River Reventazon navigable merely because it sustains some kind of commercial activity. In order to be considered a navigable water, the river's physical characteristics must permit it to be used on a much larger scale than merely for-profit white water rafting tours"). In this case, however, Plaintiff specifically alleged that Classica operated the subject cruise vessel in "navigable water", as it transported Plaintiff from West Palm Beach, Florida, to the Bahamas, and back. [ECF No. 45, ¶¶15-18]. Thus, Plaintiff's case here is more akin to *Ash* and *Balaschak,* where the admiralty location test was satisfied for an off ship injury principally because the cruise line promoted the excursion on the vessel and failed to warn the plaintiff of the danger that ultimately befell them while the cruise vessel was on navigable waters.

Lastly, the facts outlined above distinguish this case from the Court's prior case, *Matter of Heritage Oaks,* 2024 WL 517989 (S.D. Fla. 2024). In that case, a vessel's passenger was injured i) after the voyage had concluded; and ii) because of change of elevation on land. *Id.* at *1. Here, i) Plaintiff became injured during the subject roundtrip cruise; and ii) her injury was proximately caused by a ship in navigable waters when Classica failed to warn her of dangers at a port of call while she was still aboard the vessel.

The two remaining inquiries with respect to the incident's connection with maritime commerce and activity are also met.[9] As to the first issue, Plaintiff was injured at a scheduled port stop for the subject cruise; and when a passenger is injured on a shore excursion, it has the potential to impact future cruise sales and the number of excursions purchased by passengers, thereby affecting maritime commerce. *See Doe,* 394 F.3d at 901 ("Ports-of-call not only add to the enjoyment of a cruise but form an essential function of the cruise experience"; "It is easy to imagine that if rape or other forms of sexual battery become a concern for passengers, cruise-ship business would necessarily suffer"); *Balaschak*, 2009 WL 8659594, at *4 ("The cruise line industry is maritime commerce. . . . Shore excursions attract passengers to participate in cruises and are an integral part of the cruise-line industry."). Defendants miss the mark when they argue

---

[9] The *Doe* Court explained that with respect to the connection test, two issues must be considered: "(1) whether, upon assessment of the general features of the type of accident involved, the 'incident has a potentially disruptive impact on maritime commerce;' and (2) 'whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.'". *Doe,* 394 F.3d at 900.

that Plaintiff fails to establish a business relationship between Classica and Resort, [ECF No. 49, pg. 11], because Plaintiff plainly alleged one in the Complaint. *See* ECF No. 45, ¶19.

As to the second issue, the general character of the activity giving rise to the incident here is Classica's conduct in transporting Plaintiff to a shore location as part of the subject cruise, and Classica's alleged negligence in failing to warn its passengers, including Plaintiff, of the dangers of being sexually assaulted at the port of call and Resort Classica recommended and took Plaintiff to as part of the cruise. Classica's conduct and alleged breach is substantially related to a traditional maritime activity: shore excursions during a cruise. *See* cases cited above; and *Skeen v. Carnival Corp.*, 2009 WL 1117432, at *3 (S.D. Fla. 2009) ("cruise line ports-of-call stops and onshore excursions are traditional maritime activities"); *Meyer v. Carnival Corp.,* 938 F. Supp. 2d 1251, 1259 (S.D. Fla. 2013) ("Excursions on cruise ships are a major source of revenue for cruise lines, and in 2009, more passengers on cruise lines purchased shore excursions than any other goods or services… For Defendant Carnival, for example, shore excursions are a great source of profit, and as Carnival's representative conceded, its annual shore excursion program could exceed one hundred million dollars"); *Belik v. Carlson Travel Grp., Inc.*, 26 F.Supp.3d 1258, 1265 (S.D. Fla. 2012) (conducting a similar admiralty jurisdiction analysis; finding admiralty jurisdiction over a similar fact pattern).

### b.  Plaintiff's claims are premised upon a maritime contract.

In addition, and/or in the alternative, this Court has admiralty jurisdiction over this case pursuant to a maritime contract. Classica transported Plaintiff, from West Palm Beach, Florida, to Freeport, Bahamas, and back to Florida, pursuant to a maritime contract providing transportation through navigable waters. This triggers admiralty jurisdiction and therefore maritime law. *Davis v. Valsamis, Inc.*, 752 F.App'x 688, 691 (11th Cir. 2018) ("Plaintiffs' ticket contract constitutes a maritime contract because its primary objective is to accomplish the transportation of passengers by sea"); *McIntosh v. Royal Caribbean Cruises Ltd.*, 2023 WL 10430780, at *6 (S.D. Fla. 2023) ("There is no dispute that these ticket contracts qualify as maritime contracts that are subject to admiralty jurisdiction of the federal courts.").

To be sure, the U.S. Supreme Court in *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14 (2004), defined a maritime contract as one whose "primary objective" is to accomplish the transportation of something by sea; if this test is satisfied, admiralty jurisdiction is triggered. *Id.* at

24.[10] Here, Classica had a maritime contract in place with Plaintiff to transport her by sea, thus, as in *McIntosh,* "the *Kirby* test is easily met" and "[t]hat, according to *Kirby*, means that admiralty jurisdiction is satisfied even if the location test does not squarely resolve the issue.", 2023 WL 10430780, at *7.

Similar to *McIntosh,* Plaintiff's claims here are tied to the essence of the maritime contract for transportation by sea, because Classica arranged Plaintiff's hotel stay at the Resort *as part of her cruise* and transportation by sea; and Plaintiff became injured *during her roundtrip cruise*. In other words, Plaintiff's cruise was ongoing at the time she became injured. *See e.g. McIntosh*, 2023 WL 10430780, at *6 (explaining the existence of admiralty jurisdiction over Plaintiff's tort claims – even when the plaintiffs never boarded the cruise vessel – because a maritime contract formed the basis of the parties relationship, and Plaintiff's tort claims were tied to the essence of a maritime contract" because the cruise line did not responsibly execute its contractual duties).[11]

Because Plaintiff's tort claims are directly and proximately related to Classica's performance of a maritime contract, admiralty jurisdiction is satisfied. *McIntosh*, 2023 WL 10430780, at *7 ("In sum, the nature of the tort case that arises so directly from performance of a maritime contract yields admiralty jurisdiction in this case").

In summary, because this Court has admiralty jurisdiction over this case, Defendants' *forum non conveniens* challenge automatically fails. "It is well established that a case should not be dismissed on *forum non conveniens* grounds if, in a case brought under the Court's admiralty

---

[10] The Court explained that to determine whether a contract is maritime, the analysis is "conceptual"; whereas when determining whether a tort is maritime, the analysis is "spatial". *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24-25 (2004) ("We have reiterated that the 'fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime *commerce*.'… The conceptual approach vindicates that interest by focusing our inquiry on whether the principal objective of a contract is maritime commerce").

[11] It does not matter that Plaintiff has not asserted a classic breach of contract claim in this case. *McIntosh v. Royal Caribbean Cruises Ltd.*, 2023 WL 10430780, at *6 (S.D. Fla. 2023) ("Although they have not alleged any breach of contract claims arising from their ticket contracts, Plaintiffs' tort theories inevitably stem from what they perceive to be Royal Caribbean's negligent performance under those ticket contracts"). The same is true here, because Plaintiff alleges Classica negligently performed under the ticket contract when it failed to warn her of the dangers known to Classica in the subject port of call (Count I), and Classica negligently packaged Plaintiff's cruise vacation when it took her to the Resort as part of her subject cruise, (Count V). *See e.g. Chaparro v. Carnival Corp.*, 693 F.3d 1333 (11th Cir. 2012) ("… a cruise line owes its passengers a duty to warn of known dangers beyond the point of disembarkation in places where passengers are invited or reasonably expected to visit").

jurisdiction, United States maritime law is applicable." *Belik v. Carlson Travel Grp., Inc.*, 26 F.Supp.3d 1258 (S.D. Fla. 2012) (citing *Szumlicz v. Norwegian Am. Line, Inc.,* 698 F.2d 1192, 1195 (11th Cir. 1983)).

## IV.    Defendants' *forum non conveniens* challenge fails.

Even if the Court finds it does not have admiralty jurisdiction, U.S. law applies to this case, and Defendants' *forum non conveniens* challenge fails. And even if U.S. law doesn't apply – which it clearly does – Defendants' *forum non conveniens* challenge still fails because Defendants have not identified specific witnesses, critical to the case, only available in the Bahamas.

### a.   Legal standard on a motion to dismiss for *forum non conveniens*.

A motion to dismiss based on *forum non conveniens* is a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). *See Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1290 (11th Cir. 1998). The defendant invoking *forum non conveniens* – here all Defendants[12] – "*bears the heavy burden* in opposing the plaintiff's chosen forum." *Sinochem Int'l Co.,* 549 U.S. at 430; *Wilson v. Island Seas Investments, Ltd.,* 590 F.3d 1264, 1269 (11th Cir. 2009). Although the Court in deciding a motion under R. 12(b)(3) "may consider matters outside the pleadings, particularly when the motion is predicated upon key issues of fact," *Webster v. Royal Caribbean Cruises, Ltd.,* 124 F.Supp.2d 1317, 1320 (S.D. Fla. 2000), it "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Wai v. Rainbow Holdings,* 315 F.Supp.2d 1261, 1268 (S.D. Fla. 2004).

### b.   U.S. law applies to this case and, therefore, this case should not be dismissed on *forum non conveniens* grounds.

"It is well established that a case should not be dismissed on *forum non conveniens* grounds if, in a case brought under the Court's admiralty jurisdiction, United States maritime law is applicable." *Belik v. Carlson Travel Grp., Inc.*, 26 F.Supp.3d 1258 (S.D. Fla. 2012) (citing *Szumlicz v. Norwegian Am. Line, Inc.,* 698 F.2d 1192, 1195 (11th Cir. 1983)); *Doe v. Celebrity Cruises, Inc.,* 394 F.3d 891, 899 (11th Cir. 2004) (noting the Supreme Court suggests in *Norfolk*

---

[12] Including Classica, who issued a forum selection clause to Plaintiff, which required her claims against Classica be brought in this venue. *See* ECF No. 49-3. Oddly, though, Classica previously filed an Answer in this case in which it admitted this Court has admiralty jurisdiction over this case. *See* ECF No. 23, ¶11.

*Southern Railway Co. v. Kirby,* 543 U.S. 14, 23 (2004), that for a court to apply admiralty law, it must first have admiralty jurisdiction).

For starters, the forum selection clause between Plaintiff and Classica includes a choice of law provision designating the "general maritime law of the United States" as the applicable law. ECF No. 49-3, pgs. 24-25, Section 9. "Choice-of-law provisions in maritime contracts are presumptively enforceable." *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 70 (2024). This fact alone is sufficient for the Court to find maritime law applicable to the case, and therefore deny Defendants' *forum non conveniens* challenge.

Second, a formal choice of law analysis favors application of U.S. law. In *Belik v. Carlson Travel Grp., Inc.*, 26 F.Supp.3d 1258 (S.D. Fla. 2012), Judge Altonaga was presented with similar facts as those presented here, and following a formal choice of law analysis, found U.S. law applied and denied the defendants' *forum non conveniens* challenge. In *Belik*, a plaintiff was a Carnival cruise passenger, and the passenger got injured while on land at a Mexican port stop at a Senor Frog restaurant, and the Senor Frog defendants moved to dismiss on *forum non conveniens* grounds, arguing that the plaintiff's claims against them were not governed by general maritime law. *Id.* at 1274. The district court explained that "the threshold issue the Court must address in its *forum non conveniens* analysis is whether United States maritime law should apply to the Senor Frog's Defendants." *Id.* The court then conducted a choice of law analysis, and found that analysis favored application of U.S. law. *Id.* at 1283. A similar choice of law analysis here under the facts of this case compels the same finding.

Plaintiff addresses the most relevant factors.[13] First, Plaintiff is a U.S. citizen. [ECF No. 45, ¶1]. Second, the Defendants are U.S.-based entities, thus their allegiance and domiciles are in the U.S. Third, the place of contract is Florida, because Classica issued the ticket contract to Plaintiff from Florida and Plaintiff boarded the vessel in Florida. It is also relevant that the ticket contract includes a Florida forum selection clause and U.S. general maritime choice of law

---

[13] In *Lauritzen v. Larsen,* 345 U.S. 571 (1953), the U.S. Supreme Court identified seven relevant choice of law factors: the (1) place of the wrongful act, (2) law of the flag, (3) allegiance or domicile of the injured, (4) allegiance of the defendant shipowner, (5) place of contract, (6) inaccessibility of a foreign forum, and (7) law of the forum. *Lauritzen,* 345 U.S. 571, 582–93. In addition, courts must also consider whether the defendant has a base of operations in the United States. *See Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 309 (1970). These eight factors are not an exhaustive list, and the test is not a mechanical one. *See Szumlicz,* 698 F.2d at 1195.

designation. [ECF 49-3, Section 9]. *See also Belik,* 26 F. Supp. 3d at 1280–81 ("… Belik's ticket contract with Carnival … is relevant to the Court's analysis of Belik's third-party beneficiary claim against the Señor Frog's Defendants. Thus, the place of Belik's ticket contract with Carnival—the United States—will be considered in the Court's choice of law inquiry."). Fourth, the law of this forum is U.S. law. Fifth, Defendants' base of operations is in the U.S. [ECF No. 45, ¶¶3-6].

For these reasons, a choice of law analysis favors application of U.S. law, and therefore, Defendants' *forum non conveniens* position fails. The Court's analysis can end here.

**V.      A traditional *forum non conveniens* analysis also compels a finding that the Court should maintain this case.**

Notwithstanding the above choice of law analysis, even a traditional *forum non conveniens* analysis compels the conclusion that Plaintiff's claims against Defendants should not be dismissed. However, as noted above, when there is a valid forum selection agreement, the U.S. Supreme Court requires a modified *forum non conveniens. See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49 (2013) ("The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways").

**a.      Modified *forum non conveniens*, given a valid forum selection clause.**

First, Defendants' forum preference – as the parties opposing the forum selection clause – is not given any weight. "Rather, as the party defying the forum-selection clause, [that party] bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63. Other than Defendants' argument that this Florida forum is not advantageous for them, they have not carried their burden to establish this forum is prejudicial.

Second, a court considering transfer of a case "should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. ("As a consequence, a district court may consider arguments about public-interest factors only... Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."). The third consideration is not relevant here.[14]

---

[14] "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's

### b. Traditional *forum non conveniens*.

The Court should not conduct a traditional *forum non conveniens* analysis for the reasons expressed above. Out of an abundance of caution, Plaintiff addresses Defendants' arguments.

The starting point for a *forum non conveniens* analysis is accepting that there is a strong presumption in favor of the plaintiff's initial forum choice. *See Gulf Oil,* 330 U.S. 501, 508 (1947) (finding "unless the balance [of interests] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"). The presumption in favor of the plaintiff is strongest when the plaintiff is a citizen or resident of the United States -- which Plaintiff is. *See SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.,* 382 F.3d 1097, 1101-04 (11th Cir. 2004) ("Yet, we have been clear that '[t]here is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction.'").

Further, the Eleventh Circuit mandates that when a plaintiff is a U.S. citizen, like the Plaintiff here, [ECF No. 45, ¶1], district courts must "require <u>positive evidence</u> of <u>unusually extreme circumstances</u>, and should be thoroughly convinced that <u>material injustice is manifest</u>, before exercising any such discretion as may exist <u>to deny a United States citizen access to courts of this country</u>." *SME Racks, Inc.*, 382 F.3d at 101-02, n. 6 (11th Cir. 2004). Such is the rule because a U.S. citizen who brings suit in their home country is entitled to strong deference in their choice of forum. *Id.* at 1101. "That deference and that presumption do not dissolve just because the plaintiff's injury occurs outside of the United States." *Prophet v. Int'l Lifestyles, Inc.*, 447 F. App'x 121, 125 (11th Cir. 2011).[15] Here, Defendants present this Court with no positive evidence at all of any such material injustice in maintaining this case here; instead, Defendants advance to this Court only speculation and conjecture as to what evidence may be important in the case.

---

choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* at 64.

[15] Defendants seem argue that the Court should give less weight to the Plaintiff's chosen forum because she is not a Florida resident. But the Eleventh Circuit has explained that an American plaintiff's "home forum" **is *the United States*** – not a particular federal district court. *Kostelac v. Allianz Global & Specialty AG*, 517 Fed. Appx. 670, 673-74 (11th Cir. 2013) ("When a United States citizen sues in a United States District Court, he is suing in his home forum").

Further, Defendants point to other cases in this District in which courts have dismissed cases brought by U.S. citizen plaintiffs, [ECF No. 49, pg. 12, n. 10], but none of those cases involved situations in which the U.S. plaintiff was bound by a Florida forum selection clause with another defendant, as is the case here. And in addition, in those other cases the defendants were able to point to specific foreign witnesses needed to resolve issues in those cases – which Defendants completely fail to do here.

In determining whether to dismiss a case based on the doctrine of *forum non conveniens,* the Court must: (1) decide whether an adequate alternative forum exists which has jurisdiction over the case, (2) weigh the private interest factors of the parties with a presumption in favor of the plaintiff's initial forum choice, (3) if the balance of private interests is at or near equipoise, determine if the factors of public interest favor a trial in the foreign forum, and (4) assess whether the plaintiff can reinstate suit in the alternative forum without undue inconvenience or prejudice. *Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1310–11 (11th Cir. 2001).

### a. Factor 1: The Bahamas is not an adequate alternative forum that has jurisdiction over the entire case.

The Bahamas is not an adequate alternative forum because that forum would not have jurisdiction over the entire case, and Plaintiff will suffer irreparable prejudice if required to litigate her claims against the Resort Defendants there but her claims against Classica here; Classica cannot submit itself to Bahamian jurisdiction in this case as it is bound by the Florida forum agreement. Because Plaintiff's claims against the Resort Defendants are intertwined with those against Classica,[16] this factor favors maintenance of this claim before this Court.

### b. Factor 2: The parties' private interest factors favor maintenance of this entire case before this Court.

The private interests courts consider are: (a) the relative ease of access to sources of proof; (b) the cost of obtaining the attendance of willing witnesses and the ability to compel the attendance of unwilling witnesses; (c) the possibility of viewing the premises, if a view would be appropriate to the action; (d) the enforceability of a judgment in a forum; and (e) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Gulf Oil,* 330 U.S. at 508.

---

[16] For example, Classica arranged Plaintiff's stay at the Resort. [ECF No. 45, ¶19].

On this private interest factor, Defendants misinterpret the law when they argue "Plaintiff has not identified material evidence in Florida or the U.S.". [ECF No. 49, pg. 13]. In reality, it is *the Defendants'* "**heavy burden**" to establish why this forum would prejudice their defense – not Plaintiff's burden. *Sinochem Int'l Co.,* 549 U.S. at 430,

For Plaintiff's part, she proffers that there is a sufficient Florida connection and abundant Florida evidence for these reasons:

First, Plaintiff is the main witness in this case, and Plaintiff has already submitted herself to this Court's jurisdiction, and Plaintiff will testify in person at trial before this Court in Florida. Second, Plaintiff's traveling companion on the subject trip, her sister who shared a Resort room and the cruise with her, [ECF No. 49-2], is an Illinois resident, and would have relevant knowledge and testimony with respect to Plaintiff's claims and damages. Her sister is a U.S. citizen who will appear in person in this District for trial. Third, on August 7, 2023, Plaintiff went to a medical facility in West Palm Beach, Florida,[17] following the subject rape, and that is a Florida-based medical facility with numerous witnesses who have personal knowledge of Plaintiff's claims and injuries, and documentary (medical) records, over which this Court can compel testimony and evidence. Fourth, Plaintiff's Missouri medical records are also based in the U.S. Fifth, Defendants' corporate representatives are U.S. citizens who will appear at trial in this case. Sixth, Plaintiff specifically alleged that Defendant, Club Viva, processed Plaintiff's Resort stay through its Miami, Florida office, so Club Viva would have relevant evidence in Florida. *See* ECF No. 45, ¶7. As such, there are plenty of witnesses, who Plaintiff has specifically identified, over which this Court can compel attendance at trial or who will voluntarily appear. *Compare Belik,* 26 F. Supp. 3d at 1285 ("The Señor Frog's Defendants wholly fail to explain why testimony from witnesses who reside in the United States is insufficient to convey the nature of the accident.").

In contrast, Defendants have failed to identify anyone specific it needs testimony from in this case, located only in the Bahamas and over whom Defendants have no control.[18] For example,

---

[17] For purposes of confidentiality and privacy, undersigned counsel does not specifically name the medical facility but confirms it is located in West Palm Beach, Florida. That is where the subject Classica cruise started and ended. [ECF No. 45, ¶18]. Should the Court require Plaintiff will submit the medical records to the Court under seal.

[18] Even if Defendants *had* identified specific witnesses located in the Bahamas over which they cannot compel testimony, Defendants have not explained why letters of request or letters rogatory cannot be sent to the appropriate Bahamian authority pursuant to the Hague Convention to assist them in securing depositions in Bahamas or obtaining other evidence.

Defendants summarily argue that a "Mike" or "KJ" may have relevant information, [ECF No. 49, pg. 4] – but Defendants completely fail to explain *who* these people are; *what positions* they held; and *what anticipated testimony* would be important to this case. Case law is clear that Defendants' 'throw it at the wall and see what sticks' strategy is insufficient to carry their heavy burden. *See Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1347 (11th Cir. 2020) (defendants failed to carry their *forum non conveniens* burden because they did not identify employees and other witnesses by name or position, and did not explain how the foreign witnesses testimony would be critical to the case); *Zelaya v. De Zelaya*, 250 Fed. App'x 943, 947 (11th Cir. 2007) (private factors must "be based on issues framed by the parties and an evidentiary record, not speculation as to what witnesses and documents might be relevant and where they might be located").

Similarly, Defendants lament that "testimony from the security guards and resort staff who were on the Resort property of the alleged incident or in charge of managing operations will be critical to the Defendants' ability to challenge/rebut the Plaintiff's negligent claims." [ECF No. 49, pg. 16]. But, again, Defendants completely fail to identify any specific security guard, by name or position, and they fail to explain what important perspective or testimony any such witness may have. This is in contrast to the cases Defendants themselves cite; for example, in *McLane v. Marriott Int'l, Inc.,* 547 F. App'x 950, 955 (11th Cir. 2013), the defendants there pointed out the importance of the anticipated testimony from the captain and mate who operated the vessel that caused the plaintiff's injury. *Compare to Otto Candies, LLC*, 963 F.3d at 1347 (rejecting *forum non conveniens* because defendant did not explain how testimony of foreign witnesses would be critical to the case); *Zelaya*, 250 Fed. App'x at 947 (similar).[19]

Also similarly insufficient is Defendants' argument that "[g]iven the Plaintiff's negligent security allegations, it is essential for the fact finder to be furnished the opportunity to conduct a first-hand inspection of the layout of the Resort's premises". [ECF No. 49, pg. 16]. The flaw here is Defendants fail to explain why the factfinder taking a trip to the Resort will assist in resolving any critical issue; and they fail to explain how or why the specific scene of the rape cannot be explained to the factfinder through photographs. *See Matthews v. Whitewater W. Indus*., 2012 WL

---

[19] It is important to note that no one from the Bahamas or the Resort even responded to Plaintiff's incident, as she first sought medical care from medical professionals aboard Classica's cruise ship, and then medical professionals in West Palm Beach, Florida, as soon as she disembarked the cruise ship on August 7, 2023. In other words, Resort security personnel would have little to no personal knowledge as to Plaintiff's incident, as no immediate investigation at the Resort was done.

1605184, at *9 (S.D. Fla. 2012) (denying *forum non conveniens* motion in part because "defendants have not met their burden in showing why the ... conditions of the Waterslide and Pool cannot be sufficiently presented to the jury through photographs"); *Sun Tr. Bank v. Sun Int'l Hotels, Ltd*., 184 F. Supp. 2d 1246, 1264 (S.D. Fla. 2001) ("Defendant has not alleged or established that there is anything unusual about the physical layout of the site that cannot be adequately and accurately depicted in photographs and diagrams"). *See also Belik,* 26 F. Supp. 3d at 1286-87 (finding private interests favored Florida court because plaintiff was a U.S. citizen and "obligated to file this action here pursuant to a contractual forum selection clause"); *Wagner v. Island Romance Holidays, Inc.,* 984 F. Supp. 2d 1310, 1316 (S.D. Fla. 2013) (denying a Jamaican resort defendant's *forum non conveniens* motion because, even though there were some witnesses in Jamaica, "[t]he Defendants fail to provide arguments that 'material injustice is manifest' such that the Court should be compelled to deny the Plaintiffs access to United States courts.").

Lastly, Defendants' argument that it will be prejudiced by its inability to implead ASSAILANT 1, [ECF No. 49, pg. 12], is misplaced because ASSAILANT 1 has not yet been identified. In other words, Defendants have not established that he is not in the U.S., a U.S. citizen, or that this Court does not otherwise have subpoena power over him.

Because Defendants have not identified any specific witnesses it will need at trial to defend Plaintiff's claims, who are only available in the Bahamas and over whom Defendants have no control, and Defendants fail to explain any other specific evidentiary concerns that make this case substantially inconvenient to try before this Court, Defendants have completely failed to carry their "**heavy burden** in opposing the plaintiff's chosen forum", *Sinochem Int'l Co.,* 549 U.S. at 430. Defendants' *forum non conveniens* fails and ends on this point.

   c.  **Factor 3: Because the balance of private interests is not at or near equipoise, the Court should not even consider whether public interest factors favor a trial in the foreign forum.**

The public interest factors assessed include: (a) the administrative congestion resulting from cases being tried at a site other than their origin, (b) the forum's interest in the dispute, (c) the burden of jury duty on the community in which the court sits, and (d) difficulties associated with applying foreign law. *Gulf Oil,* 330 U.S. at 508–09. In evaluating the private and public interests implicated by the venue of the litigation, "the district judge must consider the level of

deference to accord the plaintiff's choice of forum." Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3828 (3d ed. 2007).

Here, the Court need not even address public interest factors, as explained above, because the balance of private interests heavily favors retaining the action before this Court. *Belik,* 26 F. Supp. 3d at 1287 (similar refusal to engage in a full consideration of public factors because the defendant failed to carry its burden on the private factors).

Notwithstanding, Plaintiff makes three arguments here. First, United States law is applicable to this matter, (*see* Section IV(b), above), which counsels against relegating Plaintiff's claims to adjudication in a foreign forum. Second, the Court's public interest analysis should begin with the understanding that Plaintiff is a U.S. citizen, and therefore, should not be ousted from a U.S. forum. *Wagner v. Island Romance Holidays, Inc.*, 984 F. Supp. 2d 1310, 1316 (S.D. Fla. 2013) ("On balance, therefore, the public interest factors do not cut in favor of dismissing this case. The primary factor driving this decision is the United States' interest in providing a forum for its citizens in which to seek redress for injuries caused by foreign defendants who are subject to U.S. jurisdiction"). Third, Defendants dodge an analysis of the public interest factors with respect to the interests of the appropriate domestic forum—the United States—not merely Florida. *See Wilson,* 590 F.3d 1264 at 1271 (finding the district court improperly limited its consideration of *forum non conveniens* test to just one judicial district, as "[t]he relevant forum for purposes of the federal *forum non conveniens* analysis is the United States as a whole"). "Indeed, it would be highly unfair for a plaintiff to be bound by a domestic forum selection clause, only to have his claims dismissed to a foreign forum by foreign defendants—who have a significant relationship with the defendant that contracted for the forum selection clause—due to any limited connection of the action to the selected domestic judicial district." *Belik,* 26 F. Supp. 3d at 1287.  In summary, this U.S. Court has a greater interest in this case than the Bahamas, because this case involves a crime committed against a U.S. citizen.

### d. Factor 4: Plaintiff cannot reinstate suit in the Bahamas without undue inconvenience or prejudice.

As explained above, the Bahamas is not an adequate alternative forum because that forum would not have jurisdiction over the entire case; the Bahamas would not have jurisdiction over Classica because Classica and Plaintiff contractually agreed to Florida as the forum for Plaintiff's claims. ECF No. 49-3. In other words, if the Court were to dismiss Plaintiff's claims against the

Resort Defendants for *forum non conveniens*, Plaintiff will suffer irreparable prejudice because she would need to litigate her claims in separate proceedings and in different forums.

**VI.     Plaintiff's failure to warn claims against Defendants (Counts I and IV) are supported by sufficient factual detail.**

Defendants' last argument is that Plaintiff's failure to warn claims (Count I and IV) are not supported by sufficient factual detail as to Defendants' notice that employees of the Resort had a propensity for sexual assault. [ECF No. 49, pg. 22]. Defendants' argument fails as Plaintiff's Second Amended Complaint alleges sufficient facts as to Defendants' notice. ECF No. 45, ¶23-25 (notice allegations).

First, "a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Guevara v. NCL (Bahamas) Ltd.,* 920 F.3d 710, 720 (11th Cir. 2019). Here, Plaintiff alleged that in October 2016, a previous guest of the Resort was allegedly gang raped by employees of the Resort, including security personnel. ECF No. 45, ¶23. This substantially similar prior incident is sufficient to impute Defendants with notice of the alleged dangerous condition. To be sure of the Resort Defendants' knowledge on this point, Plaintiff provided an excerpt of the October 2016 complaint at ECF No. 45, ¶23, and therein, and as alleged by Plaintiff, the Resort's General Manager responded online to the guest's incident, thereby imputing the Resort with notice of this prior incident. It is thus reasonable to infer that the Resort Defendants were aware of this prior incident.[20]

In addition, Plaintiff specifically alleged that the Resort Defendants "set and/or enforced 'Wyndam' Brand Standards for the Resort to follow in operating the Resort, and the Resort Defendants required the Resort and/or its employees to undertake 'Wyndham" training'. [ECF No. 45, ¶20]. In enforcing Brand Standards and training, it is plausible, and the Court can reasonably infer, that the Resort Defendants knew or should have known of the October 2016 prior incident and the Resort employee's ongoing habit since that time of encouraging alcohol use to Resort guests and/or plying Resort guests with alcohol and tracking them while at the Resort. It is thus reasonable to infer that the Resort Defendants, in setting and/or enforcing Wyndham's Brand Standards and training for Resort employees, knew or should have known of this prior incident.

---

[20] The standard on a motion to dismiss is whether the plaintiff has asserted facts that make a claim "plausible". *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

*See e.g. Twyman v. Carnival Corp.,* 410 F. Supp. 3d 1311, 1322 (S.D. Fla. 2019) (Altonaga, J.) (noting that the plaintiff's allegation that a cruise line managed a cruise center supported the reasonable inference that the cruise line knew or should have known of dangerous conditions associated with a jet ski vendor operating at the cruise center).

Similarly, Classica knew or should have known of this prior incident because, as Plaintiff alleged, "Classica undertook a duty to arrange the Plaintiff's hotel accommodations, and in doing so, did, or should have, researched the Resort's safety, including any prior sexual assault incidents occurring at the Resort. Had Classica reasonably investigated the Resort, Classica did or should have discovered this prior October 2016 incident, realized the Resort was not reasonably safe, and should not have arranged or encouraged Plaintiff's stay at the Resort." [ECF No. 45, ¶24(d)].[21]

Classica also knew or should have known that sexual assault crimes were prevalent in Freeport because between 2018-2019, the U.S. State Department issued a travel warning(s) for the Bahamas, specifically including Freeport, Bahamas, where the subject Resort is located, warning that violent crime, including sexual assault, is common, even during the day and in tourist areas. [ECF No. 45, ¶24(c)]. Classica knew or should have known of this warning as it is a U.S.- and Florida-based cruise line that has its cruise ships call at port in Freeport, Bahamas often. *Id. See also Bater v. Unique Vacations, Inc.*, 2020 WL 5519386, at \*7 and n.7 (S.D. Fla. 2020) (finding U.S. State Department warnings about crime in Jamacia relevant to a tour operator's knowledge of same; "MTC asserts that there is no evidence that it had actual knowledge of prior incidents of sexual assault against resort guests in Ocho Rios, Jamaica, or at the Beaches Resort, during the relevant time period. The Court finds this assertion incredulous as tour operators such as MTC regularly review and access U.S. State Department Crime Reports and travel warnings."). *See also Chaparro*, 693 F.3d at 1337 (finding similar notice allegations against a cruise operator for an off-ship incident sufficient to support a failure to warn claim).

Second, a plaintiff can establish constructive notice with evidence that the "defective condition exist[ed] for a sufficient period of time to invite corrective measures." *Guevara,* 920

---

[21] *See Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1365 (S.D. Fla. 2015) (Bloom, J.) ("whenever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service thereby assumes a duty to act carefully and to not put others at undue risk of harm.") (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)); *see also* ECF No. 45, ¶19 (factual allegation that Classica undertook a duty to arrange Plaintiff's stay at the Resort).

F.3d at 720. Here, the Resort allegedly employed sexually deviant employees in October 2016, and the same dangerous condition manifested itself when it caused Plaintiff's August 2023 incident. As such, the dangerous condition of the Resort employing sexually deviant employees existed for a sufficient period of time (since October 2016) for Classica and the Resort to invite corrective measures, and this allegation is similarly sufficient to impute Defendants with notice. Yet, in further support of this allegation and notice avenue, Plaintiff specifically alleged that:

> The Resort's employees had a habit and/or practice of encouraging alcohol use to Resort guests and/or plying Resort guests with alcohol and tracking them while at the Resort, with a motive to sexually assault and/or rape them if they became vulnerable. Given that the Resort Defendants knew or should have known that their employees were fraternizing with Resort guests in an impermissible way on Resort premises and giving them alcohol, the Resort Defendants knew or should have known of the probability that the Resort Defendants' employees would sexually assault and/or rape Resort guests.

[ECF No. 14, ¶24(b)]. This allegation is important because it further explains, with factual detail, the ongoing habit of Resort employees, following the October 2016 prior incident, which should have invited Defendants' corrective actions to remedy this dangerous condition.

Lastly, evidence that a defendant has taken corrective action can establish its notice of a dangerous condition. *Carroll v. Carnival Corp.,* 955 F.3d 1260, 1265 (11th Cir. 2020). Here, the Resort Defendants conduct in enforcing Wyndham's "training" and "Brand Standards", [ECF No. 45, ¶20], supports the reasonable inference that the Resort Defendants took corrective action to prevent Resort employees from sexually assaulting Resort guests, as such employee conduct would be adverse to Wyndham's brand standards. In conclusion, Plaintiff alleged sufficient factual detail – whether facts are considered in isolation or considered in the aggregate – to support her failure to warn claim.

**WHEREFORE**, Plaintiff respectfully request that this Honorable Court enter an Order denying Defendants Joint Motion to Dismiss, [ECF No. 49], in its entirety, in addition to any further relief this Court deems just and proper; including, but not limited to permitting Plaintiff to amend the Complaint should this Court deem any aspect is insufficiently pled.

Dated: October 24, 2024.

Respectfully submitted,

LIPCON, MARGULIES,
& WINKLEMAN, P.A.
*Attorneys for Plaintiff*
2800 Ponce de Leon Blvd., Suite 1480
Coral Gables, FL 33134
Telephone: (305) 373-3016
Facsimile: (305) 373-6204

By: */s/ Luis Alexander Perez*
     **LUIS ALEXANDER PEREZ**
     Florida Bar No. 125452
     aperez@lipcon.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 24, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

By: */s/ Luis Alexander Perez*
     **LUIS ALEXANDER PEREZ**

## SERVICE LIST
### Case No. 24-cv-80738-RLR/BER

| | |
|---|---|
| **Armando Rubio, Esq.**<br>arubio@fieldshowell.com<br>**Michael Redondo, Esq.**<br>mredondo@fieldshowell.com<br>**Tyler E. Sanchez, Esq.**<br>tsanchez@fieldshowell.com<br>FIELDS HOWELL LLP<br>9155 S. Dadeland Blvd., Suite 1012<br>Miami, Florida 33156<br>Phone: 786-870-5610<br>Fax: 855-802-5821<br>*Attorneys for Defendants, Wyndham Hotels &*<br>*Resorts, LLC, TMH Worldwide, LLC, and*<br>*WHG Caribbean Holdings, Inc.* | **Darren W. Friedman, Esq.**<br>dfriedman@fflegal.com<br>**Lizbeth Michel, Esq.**<br>Lmichel-escandell@fflegal.com<br>**Tyler J. Canfield, Esq.**<br>tcanfield@fflegal.com<br>FOREMAN FRIEDMAN<br>2 South Biscayne Boulevard, Suite 2200<br>Miami, FL 33131<br>Phone: 305-358-6555<br>Fax: 305-374-9077<br>*Attorneys for Defendant, Classica Cruise*<br>*Operator Ltd.* |