UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO: 24-cv-80738-RLR/BER

JANE DOE (E.W.),

      Plaintiff,

vs.

CLASSICA CRUISE OPERATOR, LTD.
d/b/a *Margaritaville at Sea*,
WYNDHAM HOTELS AND RESORTS, LLC,
TMH WORLDWIDE, LLC,
WHG CARIBBEAN HOLDINGS, INC.,
CLUB VIVA INTERNATIONAL, INC.,
BARBARY BEACH DEVELOPMENT LIMITED
d/b/a *Viva Fortuna Beach by Wyndham,*
XYZ DEFENDANT(S), and
ASSAILANT 1,

      Defendants.

_____/

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF NO. 52)

COME NOW, Defendants, WYNDHAM HOTELS & RESORTS, LLC ("WHR"), WHG CARIBBEAN HOLDINGS, INC. ("WHG"), TMH WORLDWIDE, LLC ("TMH"), and CLASSICA CRUISE OPERATOR, LTD., ("Classica"), by and through the undersigned counsel hereby file their Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 49), and in support thereof, state as follows:

## ARGUMENT

### I.  Admiralty Jurisdiction Does Not Apply to this Case

First, this Court already considered whether admiralty jurisdiction applied, based on the two-pronged test for admiralty tort claims and dismissing Plaintiff's First Amended Complaint for lack of subject matter jurisdiction (the "Order"). [ECF 42]. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534 (1995). The Order added that the Plaintiff's attempt to extend admiralty jurisdiction to a purely land-based incident, with no substantial maritime

connection, exceeded the boundaries in the Eleventh Circuit's decision in *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 900 (11th Cir. 2004) and this Court held that Plaintiff's claim did not satisfy the location test.

As discussed below, and in a last-ditch effort to persuade this Court that admiralty jurisdiction applies, despite this Honorable Court's prior ruling, Plaintiff attempts to argue that because a maritime contract exists, which Defendants dispute, admiralty jurisdiction effectively automatically applies despite the location test not being satisfied. [ECF No. 52 p. 14]. Plaintiff's argument, similar to what the Court has already recognized, is unpersuasive to apply admiralty jurisdiction to this case and would require this Court to go beyond the outer boundaries of admiralty jurisdiction over torts. Specifically, Plaintiff's reliance on *McIntosh v. Royal Caribbean Cruises Ltd.,* 17-23575-CV, 2023 WL 10430780, (S.D. Fla. Aug. 31, 2023), is misleading. In *Mcintosh*, this Court explained that unlike traditional tort cases that involve cruise lines, like a personal injury occurring on a vessel or during an excursion, the tort claims in this case are far more tied to the essence of a maritime contract. Specifically, the tort claims at issue in *Mcintosh* were part and parcel of plaintiff's claim that Royal Caribbean did not timely cancel their contract and refund their deposits. "In contractual terms, [p]laintiffs are alleging that the consideration for their payment –the embarkation and transportation on the vessel – was no longer possible given the threat of dangerous weather." *Id* at. 7.

The *McIntosh* Court explained that, in sum, the nature of the tort case that arises so directly from performance of a maritime contract yields admiralty jurisdiction in this case. Here, the nature of the tort case, an alleged sexual assault at a hotel, does not arise so directly from performance of the Cruise Contract as to yield admiralty jurisdiction in this case. As this Court has previously explained, Plaintiff's allegations connecting the Resort to the cruise concern the fact that the cruise operator, Classica, arranged for Plaintiff's accommodations at the Resort as part of Plaintiff's cruise package. However, Plaintiff has alleged no facts indicating that the cruise exercised any control over the Resort or the alleged assailant. [ECF 42]. In fact, the Cruise Contract specifically informs Plaintiff that it does not control or have any duties relating to off vessel activities or transport, including hotel accommodations which may have been made for guests, which are solely done for the convenience of the guest, and Classica does not supervise said facilities and guests agree that Classica assumes no responsibility or guarantees the performance of said facilities, including hotel accommodations. *See* [ECF 49-3].

## II. Plaintiff's forum selection agreement with Classica does not apply to the subject incident

Plaintiff's forum selection agreement with Classica does not apply to the subject incident because the ticket contract, which contains the forum selection agreement, applied only to Plaintiff's sailings. Defendants acknowledge that Classica's ticket contract provides that "any and all claims . . . related to [Plaintiff's] voyage, including any activities on or off the vessel, shall be filed in the United States District Court for the Southern District of Florida in Palm Beach." (ECF No. 49-3, pgs. 24-25, Section 9). However, Plaintiff fails to take into account Defendants' assertion that the same ticket contract applies (1) only to Plaintiff's sailings, of which there were two, and (2) that Plaintiff's claims do not relate in any way to Plaintiff's *voyage*, even if the incidents giving rise to them occurred off the vessel. Moreover, Classica's ticket contract, including the forum selection clause included therein, does not apply to non-contracting Defendants WHR, WHG, and TMH.

### A. The cruise ticket contract applies only to sailings

Plaintiff's cruise ticket contract applies only to sailings, and those limited activities which occur off the vessel during sailings, and Defendants raised this argument in their Motion to Dismiss the Second Amended Complaint (ECF No. 49, pgs. 18-19). Plaintiff's Response argues that the ticket contract applies to activities taking place off the vessel, which, for the purposes of the pending Motion, Defendants do not dispute; however, for the ticket contract to apply to a land-based incident, the incident must have occurred during the sailing. This Court is undoubtedly familiar with standard cruise itineraries, which list (1) the number of nights spent aboard the cruise, and (2) all ports of call. The cruises at issue in this case were largely different from those just described, in that they were akin to a ferry service, wherein passengers are ferried to a location, and then, after a time period selected by the passenger, e.g., 4-nights or 6-nights, ferried back. Defendants, again, draw this Court's attention to the fact that Plaintiff was issued two separate tickets for passage by Classica. Plaintiff's Response attempts to classify Plaintiff's stay at the subject resort as some form of an extended shore excursion, which it was not, nor was it ever represented to have been. This Court should disregard Plaintiff's citations to this District's caselaw surrounding shore excursions, because Plaintiff's stay at the subject resort was not part of a shore excursion. Further, Plaintiff argues that the ticket contract applies to "transportation furnished" (ECF No. 52 pg. 5), which Defendants similarly do not dispute. However, as Plaintiff

clearly states in her Response, she was issued a shuttle voucher to bring her to the resort, and the argument in support of the ticket contract's application to the subject incident, (an alleged sexual assault occurring at the resort) is irrelevant and distracting in that there is no allegation that Plaintiff's incident was in any way connected to this transportation, e.g., a shuttle accident of some form. Therefore, this Court should disregard any argument regarding the ticket contract's language regarding transportation furnished, as the subject incident was wholly unrelated to the transportation Plaintiff alleges to have received to the resort.

Furthermore, the cruise ticket contract issued to Plaintiff is not ambiguous, as Plaintiff tries to argue it is. As previously stated, for the purposes of this action, Defendants do not contest that the ticket contract applies to off-ship incidents during sailings. Plaintiff's attempt to argue that the ambiguities in the ticket contract under *Arriga v. Fla. Pac. Farms, L.L.C.,* 305 F.3d 1228, 1248 (11th Cir. 2002) is misplaced, as a full analysis of the ticket contract contains no ambiguity. The ticket contract applies during sailings, and when a sailing is concluded, the ticket contract will not apply. Theoretically, under Plaintiff's argument, any land-based incident that occurs after a passenger disembarks from one of Classica's ships would fall under the scope of the ticket contract, so long as, at one point in time, the claimant was a passenger aboard one of Classica's ships. Again, this case does not involve a shore excursion, and this Court should reject Plaintiff's argument in support of classifying it as one. Accordingly, because the subject incident did not occur during either of Plaintiff's cruises, whether on or off the vessel, the ticket contract cannot apply.

**B.  Plaintiff's claims do not relate to the voyage**

Here, Plaintiff took two voyages, one from the Port of Palm Beach to Freeport, Bahamas, and another returning to Palm Beach. As it relates to her first sailing, this Court should consider Freeport, Bahamas as a "final destination," at which point, and following a disembarkation, Plaintiff's first *voyage* had come to an end. The very reason Plaintiff was issued two tickets in connection with her stay at the hotel is precisely because she took two cruises, or two *voyages*. Again, the incident giving rise to Plaintiff's Complaint did not occur during a shore excursion; it occurred during a multiple-night stay at a resort in the Bahamas, where Plaintiff was necessarily ferried to, and following her stay at the resort, ferried back. By the Plaintiff's argument, all ferries operating in navigable waters of the United States are exposed to liability for land-based torts occurring to passengers following their disembarkation, so long as they have a return ferry ride

booked. Because Plaintiff's claims arose at a time after her first voyage, and before the commencement of her second, her claims cannot relate to the voyage, and thus, the ticket contract cannot apply. Furthermore, Plaintiff's Second Amended Complaint still fails to allege, under *Doe v. Celebrity Cruises, Inc.,* 394 F.3d 891, 901 (11th Cir. 2004) that there "was little practical difference between the port-of-call and other parts of the ship," which would be nearly impossible in this case because (1) Classica's *Margaritaville at Sea Paradise* was not in port at Freeport, Bahamas during Plaintiff's resort stay, and (2) because Freeport, Bahamas was the final destination of Plaintiff's first cruise with Classica, e.g., her cruise had ended by the time the incident occurred, and this, again, is evidenced by the separate tickets for passage issued to Plaintiff.

Plaintiff's reference to *Chaparro v. Carnival Corp.,* 693 F.3d 1333 (11th Cir. 2012), is also misplaced in regards to Defendant's, Classica, argument that they "owed no duty or responsibility to Plaintiff during [her time off ship]" as that case is so clearly distinguishable from the facts of this case, as *Chaparro* involved an incident that occurred while, during a scheduled docking in St. Thomas, Plaintiffs traveled to a St. Thomas beach, albeit independently of the ship's sponsored excursions in St. Thomas, because the *Carnival Victory* was still in port, and the incident occurred while Plaintiffs were returning to the ship. *Id.* at 1335. The incident alleged in Plaintiff's Second Amended Complaint did not occur while Plaintiff was in transit to the ship, nor did it occur during that cruise's scheduled docking as part of the cruise itinerary, and occurred while the *Margaritaville at Sea Paradise* was not, and had not been for multiple days, docked in Freeport, Bahamas. Accordingly, Plaintiff's references to *Chaparro* in support of her opposition to Defendants' Motion to Dismiss, should be disregarded, as the facts of that case are so clearly distinguishable to the one at bar.

Plaintiff similarly cannot allege any facts indicating that Classica exercised any control over the Resort or the alleged assailant, and there are no allegations that the alleged assailant was a crewmember of Classica's.

**C. The forum selection clause between Plaintiff and Classica does not apply to non-contracting Defendants, Wyndham Hotels and Resorts, LLC, TMH Worldwide, LLC, and WHG Caribbean Holdings, Inc.**

Here, Plaintiff does not have a contract with WHR, WHG, or TMH. There is no privity of contract between Plaintiff and WHR, WHG, or TMH., so as to subject WHR, WHG, or TMH to the forum selection clause in the Cruise Contract, even if valid which Defendants dispute.

Moreover, "[i]t is axiomatic that a party may not be held liable for a breach of contract if they were not a party to the contract or otherwise agreed to accept its terms." *Id.*; *Tampa Elec. Co. v. Remee Prod. Corp.*, No. 8:19-CV-2006-T-30JSS, 2019 WL 13246904, at *1 (M.D. Fla. Oct. 30, 2019) (*citing Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1073 (11th Cir. 2003) ("It is axiomatic that '[g]enerally, a contract does not bind one who is not a party to the contract, or who has not in some manner agreed to accept its terms.' ")).

Plaintiff's reliance on *Belik v. Carlson Travel Group, Inc.,* 26 F. Supp. 3d 1267 (S.D. Fla. Jan. 25, 2013) in her attempt to subject WHR, WHG, and TMH, to the forum selection agreement between Classica and Plaintiff is misguided. *Belik* is distinguishable from the instant case. In *Belik*, the court found the ticket contract requiring the application of U.S. law between plaintiff and defendant Carnival relevant as to plaintiff's third-party beneficiary claims against non-contracting defendants Senor Frogs, who argued Mexican law should apply, because "[p]laintiff's injury resulted while he attended the Cozumel Beach Party! Excursion, which operated under an understanding between defendant SinglesCruise, a signatory to the ticket contract, and the Senor Frog's defendants for a mutual benefit. In *Belik*, the Senor Frog's defendants actually arranged the Cozumel Beach party! Excursion with the SinglesCruise defendants. As such, the *Belik* court found that the ticket contract which was incorporated into the contract between SinglesCruise defendants and Carnival defendants, which included the Cozumel Beach Party! excursion arranged by non-contracting Senor Frog's defendants was relevant to the court's forum selection/choice of law analysis.

Here, *Biltek* is clearly distinguishable from the instant case as the non-contracting defendants WHG, WHR, and TMH, have no relationship to the Cruise Contract, did not arrange for any excursion, hotel stay, or any other activity referenced in the Cruise Contract involving Plaintiff. Furthermore, and unlike *Biltek* there is no third-party beneficiary claim against WHG, WHR, and TMH. As such, and as the facts, circumstances, and cause of action in *Biltek* involving

the non-contracting defendants are so clearly distinguishable from the non-contracting defendants in the case at bar, this Court should disregard *Biltek* and find that the forum selection clause in the Cruise Contract between Classica and Plaintiff, even if valid, does not apply to non-contracting Defendants WHG, WHR, and TMH and dismiss this matter on the grounds of *forum non conveniens* in favor of the Bahamas.

### III. U.S. Maritime Law Does Not Apply to this Action, an Adequate Alternative Forum Exists in the Bahamas, and The Case Should be Dismissed on Traditional *forum non conveniens* grounds

In sum, as this Court has already ruled that admiralty jurisdiction does not apply, U.S. maritime law does not apply to this case and (1) the Bahamas is an adequate and available alternative forum, (2) the public and private interest factors weigh in favor of dismissal, and (3) the Plaintiff can reinstate her suit in the Bahamas without undue inconvenience or prejudice." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001).[1]

There is no dispute whatsoever that the accident in question occurred entirely at the Resort in Freeport, Bahamas. At the time of the accident, the Plaintiff was a guest at the Resort, which is unquestionably under the sovereign jurisdiction of the Bahamas. The incident described in Plaintiff's Second Amended Complaint occurred on land, not on navigable waters. The alleged tort did not occur on navigable waterways, was not caused by a vessel in navigation, it did not occur during either of Plaintiff's sailings, nor was it committed by any of Classica's crewmembers. As such, this case bears a substantial distinction from *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 893 (11th Cir. 2004) where a Plaintiff cruise line passenger sued defendant cruise line, vessel owner, and two other service providers after she was allegedly raped by a cruise crew member. Additionally, and as Plaintiff clearly states in her Response, the Court in *Doe* explained that "where a passenger or cruise vessel puts into numerous ports in the course of a cruise, these stopovers are the *sine qua non* of the cruise." *Id.* at 901. There is no dispute that the cruises Plaintiff took surrounding this case (1) did not have multiple stops, and (2) had very clearly defined beginning and ending points, and as Plaintiff's incident did not occur during the

---

[1] Pinder v. Moscetti, 666 F. Supp. 2d 1313, 1318 (S.D. Fla. 2008) (holding "[c]ourts are generally 'reluctant' to hold an alternative forum inadequate"). This Court has consistently found the Bahamas to be an available and adequate forum for such litigation if the *forum non conveniens* factors weigh in favor of the moving party. *See, e.g.*, Klyszcz v. Cloward H20 LLC, No. 11–23023, 2012 WL 4468345, at *3–4 (S.D. Fla. Sept. 26, 2012).

sailing, or remotely close to those beginning or ending points, as clearly specified in Plaintiff's tickets for passage.

Moreover, a correct analysis of private interests for purposes of a motion to dismiss for *forum non conveniens* begins with the elements of the plaintiff's causes of action. A court must then consider the necessary evidence required to prove and disprove each element. Lastly, the court should make a reasoned assessment as to the likely location of such proof. *Ford v. Brown,* 319 F.3d 1302, 1303 (11th Cir. 2003) ("Perhaps the most important "private interest" of the litigants is access to evidence"). Indeed, the court must scrutinize the substance of the dispute, evaluate what proof is required and determine whether the pieces of evidence cited by the parties are critical or relevant to the plaintiff's claims and to any potential defenses to same. *Tarasewicz v. Royal Caribbean Cruises, Ltd.,* No. 14-CIV-60885, 2015 U.S. Dist. LEXIS 84779, at *42 (S.D. Fla. June 30, 2015); *Van Cauwenberghe v. Biard,* 486 U.S. 517, 528 (1988). Documentary evidence pertaining to the resort accommodations, policies, design plans, maintenance, security guards, employee records, and the accident investigation are located at the resort in the Bahamas. Neither liability witnesses nor relevant documentary evidence are located in Florida. The presence of a considerable number of third-party witnesses in the Bahamas, all of whom are beyond this Court's subpoena power, weighs heavily in favor of dismissal. Defendants have identified important witnesses including resort employees. *See, e.g., Ericson v. Wyndham Worldwide Corp.*, No. 12-20103, 2014 WL 11822749,  (S.D. Fla. Feb. 28, 2014) (dismissing, where "[the] [d]efendants have identified important witnesses that are outside this Court's compulsory process"); Tazoe, 631 F.3d at 1332 (dismissing because the "Southern District of Florida lacks the authority to compel certain witnesses to attend proceedings"); Rosen v. Execujet Servs. LLC, 241 F. Supp. 3d 1303, 1309-12 (S.D. Fla. 2017) (dismissal "heavily" favored where "majority of the material witnesses in this action ... would not be subject to compulsory process").

Moreover, and like this Court in *Ericson*, 12-20103-CIV, 2014 WL 11822749, at *4 (S.D. Fla. Feb. 28, 2014) explained when it dismissed plaintiff's complaint based on *forum non conveniens* in favor of the Bahamas, "the current and former employees of Cable Beach Resort will be important in evaluating each of the alleged breaches of the duty of care [d]efendants owed to plaintiff". Additionally, in supporting its decision of dismissal, this Court in *Ericson* explained that "the employees will be important witnesses regarding Plaintiff's conduct" while she was at the subject property. *Id*.

Here, and similar to *Ericson*, Defendants have identified important witnesses in the Bahamas, the Resort employees will be important in evaluating each of the alleged breaches of the duty of care Defendants owed to Plaintiff, and the Resort employees will be important witnesses regarding Plaintiff's conduct while at the Resort.

Moreover, Plaintiff alleges that there is a sufficient Florida connection and abundant Florida evidence because Plaintiff, a resident of Missouri, has already submitted herself to this Court's jurisdiction and her sister and traveling companion on the subject trip, a resident of Illinois, would also have relevant information and submit herself to this District for trial *See* [ECF No. 52 pg. 20]. However, Plaintiff's argument is unpersuasive. As this Court explained in *Ericson*, defendants' witnesses, located in the Bahamas, would be inconvenienced by having to travel to Miami rather than testifying in the Bahamas. On the other hand, Plaintiff's witnesses will already be inconvenienced by travel whether the trial is held in Miami or the Bahamas. "[B]y choosing Miami, Florida as the forum in which to litigate ... any additional burden of traveling to the Bahamas is necessarily marginal in comparison. Similar to *Ericson*, Plaintiff, her sister, and treating physicians outside of the Bahamas will already be inconvenienced by travel whether the trial is held in West Palm Beach or the Bahamas.

Finally, every Defendant in this case will be prejudiced by their inability to implead Assailant 1. Accordingly, this case should not proceed in this Court under the *forum non conveniens* doctrine.

If the Court determines that the Cruise Contract's forum-selection clause controls and that Plaintiff's claims fall within the scope of the Cruise Contract and apply forum-selection clause, the Court may still proceed with a *forum non conveniens* analysis. *See Atl. Marine Constr. Co.*, 571 U.S. at 581 & n.8. (2013).  Applying the *Atlantic Marine* test, all factors weigh in favor of dismissal. First, Plaintiff has an adequate alternative forum in the Bahamas as it recognizes claims for negligence. Second, there is no significant public interest in this Court entertaining a dispute between a non-Florida resident over negligent security claims involving a Bahamian entity that did not occur in the context of a maritime tort. Finally, Plaintiff may reinstate her action against the Defendants in a Bahamian court without undue inconvenience or prejudice. *See Barilotti v. Island Hotel Co., No.* 13-23672-CIV-MORE, 2014 U.S. Dist. LEXIS 62455 (S.D. Fla. May 6, 2014).

**IV. Plaintiff's Second Amended Complaint Fails to Allege Defendants were on Notice of the Risk Creating Condition associated with the Subject Incident**

Plaintiff's Response, which argues that Defendants should have been on notice of the risk creating condition based on an internet posting regarding an alleged sexual assault occurring at the resort, and a member of the staff responding to the post, is also insufficient to place Defendants on notice of the risk creating condition. It is irrelevant if Defendants were aware of a single isolated incident at the resort in 2016 as such notice would not give rise to a duty to warn. As previously argued, any incident involving a guest in 2016 would not impart sufficient notice on Defendants' behalf as it would be pure speculation. Further, there is no evidence that the same unidentified individuals allegedly involved in the 2016 incident were the same as those allegedly involved in the case at bar. To date, at the subject resort, there is no pattern of sexual battery, and as such, Defendants were not on notice of the same, such that they should be required to warn guests about this alleged behavior prior to their booking stays at the resort.

## REQUEST FOR RELIEF

WHEREFORE, Defendants, Wyndham Hotels & Resorts, LLC, WHG Caribbean Holdings, Inc., TMH Worldwide, LLC, and Classica Cruise Operator, Ltd., d/b/a Margaritaville at Sea, respectfully request that the Court dismiss Plaintiff's Second Amended Complaint for the reasons stated herein and, alternatively, dismiss Plaintiff's causes of action for negligent failure to warn, and for any other relief this Court finds just and proper.

Date:   October 31, 2024
        Miami, Florida

                            Respectfully submitted,

                            **FOREMAN FRIEDMAN, P.A.**

                    BY: */s/   Tyler J. Canfield* _____
                            Darren W. Friedman, Esq. (FBN 0146765)
                            dfriedman@fflegal.com
                            Lizbeth Michel-Escandell, Esq. (FBN 181994)
                            Lmichel-escandell@fflegal.com
                            Tyler J. Canfield, Esq. (FBN 1042023)
                            Tcantfield@fflegal.com
                            One Biscayne Tower, Suite 2630
                            2 South Biscayne Boulevard
                            Miami, FL 33131
                            Tel: 305-358-6555/Fax: 305-374-9077
                            Counsel for Defendant Classica Cruise Operator, Ltd.

Date: October 31, 2024
Miami, Florida

Respectfully submitted,

*/s/    Michael J. Redondo*
Armando P. Rubio (Fla. Bar No. 478539)
Michael J. Redondo (Fla. Bar No. 1002566)
Fields Howell LLP
9155 S. Dadeland Blvd., Suite 1012
Miami, FL 33156
Phone: 786.870.5610
Fax: 855.802.5821
arubio@fieldshowell.com
mredondo@fieldshowell.com
Counsel for Defendant, Wyndham Hotels and
Resorts, LLC, TMH Worldwide, LLC, WHG
Caribbean Holdings, Inc.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on October 31, 2024. We also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

By: */s/   Tyler J. Canfield*
Tyler J. Canfield, Esq.

## SERVICE LIST

| | |
|---|---|
| Luis A. Perez, Esq. | Darren W. Friedman, Esq. |
| aperez@lipcon.com | dfriedman@fflegal.com |
| Lipcon, Margulies, & Winkleman, P.A. | sargy@fflegal.com |
| 2800 Ponce de Leon Blvd., Suite 1480 | lvargas@fflegal.com |
| Coral Gables, FL 33134 | Lizbeth Michel-Escandell, Esq. |
| Tel: 305-373-3016/Fax: 305-373-6204 | Lmichel-escandell@fflegal.com |
| Counsel for Plaintiff | Tyler J. Canfield, Esq. |
| | tcanfield@fflegal.com |
| | FOREMAN FRIEDMAN, PA |
| | One Biscayne Tower – Suite #2630 |
| | 2 South Biscayne Boulevard |
| | Miami, Florida 33131 |
| | Tel: 305-358-6555/ Fax: 305-374-9077 |

| | |
|---|---|
| | Counsel for Defendant, Classica Cruise Operator, Ltd.<br><br>Armando P. Rubio, Esq.<br>arubio@fieldshowell.com<br>Tyler E. Sanchez, Esq.<br>tsanchez@fieldshowell.com<br>Michael J. Redondo, Esq.<br>mredondo@fieldshowell.com<br>Fields Howell, LLP<br>9155 S. Dadeland Blvd. Suite 1012<br>Miami, FL 33156<br>Counsel for Defendant, Wyndham Hotels & Resorts, LLC |